## BUCKLEY v. PORT HENRY IRON ORE CO.

*(Supreme Court, General Term, Third Department. July 2, 1888.)*

1. **MASTER AND SERVANT—ORDINARY RISKS OF EMPLOYMENT—MINING.**
   Plaintiff's intestate was killed by falling earth, while working in defendant's mine, at the bottom of a perpendicular wall 200 feet high. Parts of the wall were composed of what was called "bad ground," portions of which would often fall. It was the custom to inspect the wall, and remove loose portions; but no inspection had been made for from two weeks to one month before the accident, but the wall appeared as usual. No negligence was imputed to deceased, except that he knew all about the mine, and took the risk. *Held*, that deceased only assumed such risk as is usual to mining, and not such as the mine owner might have avoided by proper inspection of the wall.[1]

2. **SAME—ASSUMPTION OF RISKS—QUESTION FOR JURY.**
   In such case it was for the jury to determine whether the deceased came to his death from risks which he assumed, or from those which defendant should have protected him against; and, having been properly instructed, they were warranted in finding for plaintiff.[1]

3. **SAME—NEGLIGENCE—DANGEROUS PREMISES.**
   In such case, defendant was not liable for said accident on the theory that it was guilty of negligence in not sloping the wall.[1]

Appeal from circuit court, Essex county.

Action by Margaret Buckley, administratrix of Daniel Buckley, deceased, against the Port Henry Iron Ore Company, of Lake Champlain, to recover for the death of said deceased. Plaintiff had judgment, and defendant appeals from an order overruling a motion to set aside the verdict, and grant a new trial. Daniel Buckley, on January 9, 1885, was engaged as a workman in the mine of defendant. This was an open pit about 200 feet deep. Its north wall was perpendicular, nearly 200 feet high from the bottom, and contained a large amount of "loose ore, rotten, seamy, and soapy," which was called "bad ground." Portions of it had frequently fallen out. About a year before Buckley's death, many thousand tons had fallen; and a pile of this ore, being about 30 feet deep, yet lay on the bottom of the pit, and Buckley was engaged in removing it, with others, and had been for about six weeks, when a mass fell; and a large piece, striking upon the pile of loose ore, broke into fragments, one of which, rebounding, struck Buckley on his head, and killed him. He was so placed with reference to this falling ore that but for the rebound he would have escaped injury. Buckley was an experienced miner. He had worked in this mine seven or eight years. He knew the general condition and character of the "bad ground," and feared that it would fall. He spoke to defendant's foreman about it a few days before the accident, and the foreman told him and the others that it was as good as he could make it, and that if they did not want to work there they could go up. The method of inspection pursued by the defendant was, in addition to the general lookout which all the men working near the wall naturally made to see if there were any indications of loosening rock or ore, to send men up on ladders, and also let them down from the top with ropes, and these men would test the surface of the wall by striking it with hammers, and by looking for cracks and seams. If, then, any pieces were found that appeared to be loose, they were removed. Sounding with the hammer would disclose small pieces, but not always large ones. Much testimony was given respecting the actual inspection made preceding the accident. An inspection with the aid of ropes or ladders had not been made for at least two weeks before the accident, and possibly a month. In other respects, the inspection had been made daily. The face of the wall

---

[1] As to the servant's assumption of the risks of his employment, and the duty of the master to instruct him in regard to latent dangers, and to furnish safe appliances, see Rogen v. Enoch Morgan's Sons' Co., 1 N. Y. Supp. 273, and note; Berger v. Railroad Co., (Minn.) 38 N. W. Rep. 814, and note. See, also, Hudson v. Steam-Ship Co., (N. Y.) 17 N. E. Rep. 342, and note; Luke v. Mining Co., (Mich.) 39 N. W. Rep. 11.

presented the same appearance, seen from the pit bottom, the day of the accident as for a long time before.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*Chester A. McLaughlin,* for appellant.    *R. L. Hand,* for respondent.

LANDON, J.    The deceased, by entering upon this employment, assumed all the risks of it, except those attributable to his master's negligence with which his own did not concur.    No negligence is sought to be imputed to the deceased, except that inferable from the fact that he knew all about the mine, so far as its shape, situation, and the generally dangerous character of the "bad ground" were concerned.    The north wall of the mine, in which this "bad ground" was, was nearly perpendicular, and about 200 feet high.    The plaintiff contends that this wall could have been cut back upon a safe slope, and that the jury had a right to find the defendant guilty of negligence in its omission of this method of mining.    We are not prepared to sanction this view.    The deceased must, we think, be held to have assumed the risks incident to the mere fact that this wall was perpendicular, and not sloping.    Most mining is done beneath the surface of the earth, and under overhanging roofs of rock or ore.    It could hardly be left to the jury to find a defendant negligent because he had not opened his mine to the sunlight.

But assuming that the deceased took the risk of the perpendicular wall, filled, as it was, with "bad ground," he did not, as the defendant urges, assume all risk of injury from pieces falling from the wall.    He did not assume that risk which might arise from the lack of the defendant, as master, to exercise proper care and vigilance in inspecting the "bad ground," and in providing for the removal of such portions as such inspection would show to be about ready to fall, or in apparent danger of falling.    The defendant cites, in support of his contention that the deceased took all the risks, without the exception stated above, the following cases:    *Gibson* v. *Railway Co.,* 63 N. Y. 449;  *De Forest* v. *Jewett,* 88 N. Y. 264;  *Powers* v. *Railway Co.,* 98 N. Y. 274;  *Marsh* v. *Chickering,* 101 N. Y. 396, 5 N. E. Rep. 56;  *Hickey* v. *Taaffe,* 105 N. Y. 26, 12 N. E. Rep. 286.    We do not think they support his contention, but think they support the rule above announced.    He also cites *Eades* v. *Clark,* 11 N. H. St. Rep. 725, in which the superior court state the rule as the defendant claims it.    We do not concur.    The defendant, in entering upon this employment, knew that it was dangerous because the wall was perpendicular, and because it was filled with bad ground.    Despite all the care the master ought to take to protect him from danger, he knew he might, although this care should be taken, be killed.    That was precisely the risk he assumed,—a risk inhering in the nature of his employment.    But the added risks, resulting from his master's neglect, did not necessarily inhere in his employment.    They were imported into it by his master's neglect, and these his master was bound to protect him from.    In *Pantzar* v. *Mining Co.,* 99 N. Y 368, 2 N. E. Rep. 24, which was a mining case, the court points out the distinction between the risks incidental to the hazard of the employment and those which the care of the master should prevent.    *Benzing* v. *Steinway,* 101 N. Y. 547, 5 N. E. Rep. 449;  *Gottlieb* v. *Railway Co.,* 100 N. Y. 462, 3 N. E. Rep. 344.    The question, then, is whether the deceased came to his death from the risks which he voluntarily assumed, or from those which he had the right to expect his master would protect him against.    If from the former cause, no recovery could be had.    If from the latter, a recovery was permissible, unless the jury should find that his negligence contributed.    But contributory negligence must have existed with respect to the latter agency of death, in order to defeat recovery upon that ground.    All these questions were, upon the evidence as presented by the case, proper for the determination of the jury.    There seems to be but little evidence tending to show any contributory negligence.    The deceased was intelligent, alert, and careful, and there

is little reason to suppose that he would have continued in the way of danger if he had had notice that it was enhanced by his master's negligence. Respecting the inspection by the master, the verdict is not against or contrary to the evidence.

The defendant requested the court to charge "that, when plaintiff's intestate entered the employment of defendant, he took all the risks incident to the business." *The Court:* "Yes, with the qualification I have stated, that it was the duty of defendant to have a safe place for the man to do his work." This should be construed with reference to the qualification which the court had stated in his charge—respecting the duty of the defendant to provide a safe place. The main portion of the charge consisted of an explanation of the duty of the defendant in this respect, and of the risks assumed by the deceased. The court laid down, as a general rule, that it was the duty of the defendant to furnish the deceased with a safe place to work,—reasonably safe, —to be determined from all the circumstances. If dangerous from its situation or materials, then the defendant should make inspection, and see that the wall was safe, and free from stone that would fall. That if the deceased knew the danger, and took the risk of it, plaintiff could not recover. In response to the final request of defendant, the court charged "that if the jury believe that the wall from which the rock fell and killed deceased had been carefully inspected within a reasonable time by a competent inspector, and had been adjudged by him to be in a safe condition, defendant is not liable." No exception was taken by the defendant to the general charge of the court. We do not think the remark of the court is open to the criticism that the jury were instructed to find for the plaintiff if they found the place where plaintiff worked was unsafe. The whole tenor of the charge was to the effect that the safety required was such as reasonable care and inspection would secure. The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concur.