PETERSON, Respondent, v. WESTMAN, Appellant.

St. Louis Court of Appeals, December 15, 1903.

1. **DRUGGIST:** Negligence. A druggist, who was furnished by plaintiff with an empty bottle labeled "carbolic acid" and asked to fill it with arnica, but filled it with carbolic acid without attaching a new label, was guilty of negligence and liable to plaintiff for injuries received by using the carbolic acid in the belief that it was arnica.

2. ———: ———: Contributory Negligence. When plaintiff sent an empty bottle labeled "carbolic acid" to a drug store to be filled with arnica, and the druggist filled it with carbolic acid without attaching a new label, he was not guilty of contributory negligence in using the carbolic acid to his injury in the belief that it was arnica.

Peterson v. Westman.

3. ——: ——: **Imputing Negligence.** Where a medical student advised plaintiff to use arnica, and plaintiff procured a bottle of carbolic acid through the negligence of the druggist, the negligence of the medical student in failing to discover that the bottle was filled with carbolic acid when he looked at it, cannot be imputed to plaintiff, when the student was in no sense the agent of plaintiff.

4. ——: ——: **Instruction.** In an action for the loss of a bruised finger caused by the use of carbolic acid which a druggist had negligently furnished instead of arnica, an instruction that the jury should find for the defendant if they believed the amputation of the finger was due to the bruise, was properly refused, because there was no evidence that the bruise was severe enough to make amputation necessary, and because it ignored the action of the carbolic acid on the finger.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Thomas G. Rutledge* for appellant.

(1) The verdict is against the evidence. This case was one for the court, and not for the jury. The court should have sustained a demurrer to the evidence. Fowler v. Randall, 73 S. W. 931 (Mo. App.); Van Lien v. Scofield Mfg. Co., 14 Abb. Pr. N. S. 74. (2) Even though the druggist had been negligent in selling carbolic acid instead of arnica, that sale was not the proximate cause of the injury. The nature of the drug was known to Dr. Baird, who examined the bottle before its use, and directed its application, and also to plaintiff's wife, who applied the contents to the finger. The negligence of these two intervened between the sale and the accident, and were sufficient causes to have produced the injury. Carter v. Towne, 98 Mass. 567; Carter v. Towne (s. c.), 103 Mass. 507; Hackett v. Pratt, 52 Ill. App.

346; Washington v.. Railroad, 17 W. Va. 190.  (3)  The ordinary purpose for which carbolic acid was used in plaintiff's family was harmless.  The proximate cause of plaintiff's injury was not the sale of the acid, but the subsequent use of it by Dr. Baird and plaintiff's wife. Meyer v. King, 1 Miss. 1; Poland v. Ehrhart, 70 Ia. 285; King v. Henkie, 80 Ala. 510; Scheffer v. Railway, 105 U. S. 249; 1 Sutherland on Damages, sec. 34.  (4)  Instruction No. 1 given for plaintiff is erroneous, in requiring the jury to find in favor of the plaintiff, merely if they believed that the boy Leo asked the druggist for arnica.  It completely ignores the question of a label; it ignores any negligence on the part of the plaintiff; it ignores plaintiff's knowledge of the real contents of the bottle and the character thereof, or the danger of its use; it ignores the knowledge that his agents have of the contents of the bottle, and whether he was charged with this knowledge.  Neither are these matters covered by the other instructions given.  Hill v. Drug Co., 140 Mo. 433; Carroll v. Transit Co., 107 Mo. l. c. 662; Van Lien v. Scofield Mfg. Co., 14 Abb. Pr. N. S. 74; Van Bach v. Railway, 171 Mo. 338.  (5)  Plaintiff was bound to know all his agents knew.  The knowledge of Dr. Baird and plaintiff's wife was such as should bar a recovery by plaintiff.  Fowler v. Randall, 73 S. W. 931; Madison v. Railroad, 60 Mo. App. 605; Mechem on Agency, sec. 721; State ex rel. v. Stiltington, 51 Mo. App. 252; Hayward v. Ins. Co., 52 Mo. 181, 191.  (6) The court erred in refusing defendant's instructions "D" and "F," and refusing to instruct the jury that plaintiff could not recover if the bottle had a legible label marked "Carbolic Acid," and in completely ignoring the defense. Fisher v. Golladay, 38 Mo. App. 531; Jones v. George, 56 Texas 149; Cameron v. Hart, 57 Mo. App. 142.

*Carter & Sager,* and *John B. Denvir, Jr.,* for respondent.

(1) The verdict is for the right party, and is amply sustained by the evidence. Fisher v. Golladay, 38 Mo. App. 531; Fowler v. Randall, 73 S. W. 931 (Mo. App.). (2) The laws of agency have no application in case like this. (3) · The instructions given fully cover the case and correctly express the law. Baker v. City of Independence, 93 Mo. App. 165; Alberger v. White, 117 Mo. 347; Bank v. Hatch, 98 Mo. 376; Tyler v. Tyler, 78 Mo. App. 240; Regan v. Railroad, 144 Mo. 623. (4) The court did not err in refusing defendant's instructions marked "D" and "F." Jones v. Packet Co., 43 Mo. App. 398; Connolly v. Printing Co., 166 Mo. 447.

BLAND, P. J.—This suit was commenced before a justice of the peace where plaintiff filed the following complaint:

"Plaintiff states that on the thirty-first day of March, 1902, he bruised and injured his finger. That being desirous of relieving the pain caused by such injury, he sent his agent to the drugstore of defendant to procure arnica to apply to said injury. That said agent asked defendant for arnica, but defendant, instead of giving plaintiff's agent arnica, negligently and carelessly gave him carbolic acid. That plaintiff being ignorant of the fact that he had received carbolic acid instead of arnica, applied said carbolic acid to his finger. That said carbolic acid ate into the flesh of said finger and rendered it unfit for use; that said finger is still unfit for use and plaintiff has been unable to follow his ordinary avocation in life since the twenty-first day of March, 1902, to his great loss.

"That plaintiff has suffered and still suffers great pain and anguish from the hurt to his finger caused by said carbolic acid, and has been put to great expense for medical attention and medicine. That in conse-

quence of the premises he has been damaged in the sum of five hundred ($500) dollars.

"Wherefore, plaintiff prays judgment against defendant for the sum of five hundred ($500) dollars and his costs."

The cause was appealed to the circuit court where on a trial anew, plaintiff recovered judgment for $500, from which defendant duly appealed.

The evidence shows that plaintiff is a stone mason and while laying a stone in a wall, the end of the middle finger of his right hand was caught under the stone and bruised. Plaintiff worked on until night and then went to his home, which was over a drug store kept by the defendant. After he arrived home, he asked for a penknife for the purpose of boring a hole in the nail of the injured finger to let out the bad blood that had gathered under the nail. A medical student named Baird was boarding at plaintiff's house and was present and advised plaintiff to put arnica on the finger to take out the soreness. Plaintiff's wife had previously, on several occasions, bought carbolic acid of the defendant and had at this time a bottle containing some carbolic acid, which she poured out and then washed the bottle. The bottle had a carbolic acid label on it. After she had washed the bottle, she handed it to her son Leo, a boy twelve years old, who was given a nickel by his father (the plaintiff) and told to go down to defendant's drug store and get a nickel's worth of arnica. The boy did as he was told and returned in a few minutes with the bottle with the same label upon it and filled with carbolic acid. The student Baird picked up the bottle and looked at it, but did not discover that it contained carbolic acid and told plaintiff to wet the rag with arnica and wrap up his finger. Plaintiff got a rag, saturated it with the contents of the bottle and wrapped his finger up and poured a few drops of the acid on the rag. The next morning the plaintiff looked at his finger and put some more carbolic acid on it, supposing it to be arnica, and went to

work. In a few days he was compelled to go to a doctor who found the end of his finger so badly burned and cooked by the acid that he had to cut it off at the first joint.

The boy Leo testified that he asked the defendant for a nickel's worth of arnica; that the defendant took the bottle and went back of the counter and handed it to him filled; that defendant did not put a fresh label on the bottle; that he (witness) had never heard of arnica before.

The defendant testified that he had been in the drug business since 1876; that when Leo came into the store he had a bottle with a carbolic acid label on it, fresh and clean, with skull and crossbones, and when he got ready to wait on the boy, he took the bottle and asked him, "Carbolic Acid?" Leo said, "Yes, sir;" that the boy asked for carbolic acid and he repeated after him, "carbolic acid," and he said, "yes, sir;" that the label was marked "carbolic acid" in red letters and the word "Poison" was written on it in red letters. Plaintiff's witnesses testified that the label was scratched and partly washed off when the bottle was sent by the boy for the arnica.

The court gave the following instructions for the plaintiff:

"1. If the jury believe from the evidence that on, or about March 31, 1902, the plaintiff sent his son to the drugstore of the defendant to procure arnica, that said son asked the defendant for arnica, and the defendant sold and delivered to him carbolic acid instead of arnica, and if you believe from the evidence that in so selling the plaintiff carbolic acid, the defendant failed to use ordinary care, as defined in instruction No. 2, then you will find your verdict in favor of the plaintiff, if you find that the plaintiff and his agent exercised ordinary care at the time.

"2. By the term of 'ordinary care' as used in the instructions, is meant that degree of care that would be

used by a person of ordinary prudence under the same or similar circumstances. A failure to exercise ordinary care, as so defined, is negligence.

"3. If the jury find for the plaintiff, they should assess his damages at such a sum as they may find from the evidence will be a fair compensation to him; first, for any pain of body or mind caused by the loss of the first joint of the middle finger of his right hand, and directly caused by such injury; second, for any loss of earnings resulting directly from said injury; third, for any loss necessarily incurred for medicines and medical attention, not to exceed the sum of $500, the amount sued for.

"4. The court instructs the jury that, in considering its verdict, the jury must not be governed by sympathy for plaintiff, because he met with an injury, nor have any prejudice or feeling either in favor of or against plaintiff or defendant, but the jury should, in arriving at its verdict, be governed solely by the evidence in the case and the instructions of the court. And the court further instructs the jury that the burden of proof is upon the plaintiff, to show by a preponderance of the evidence, that is, by evidence, which is in your opinion entitled to greater weight than that offered by the defendant, that the plaintiff was guilty of the negligence alleged."

For the defendant, the court gave the following instructions:

"5. The court instructs the jury that if you believe from the evidence that the boy, Leo Peterson, asked the defendant for carbolic acid, that then the plaintiff can not recover, and your verdict must be for the defendant.

"6. The court instructs the jury that if you believe from the evidence that defendant exercised ordinary care in filling plaintiff's order that then plaintiff can not recover."

The court refused the following instructions asked by defendant:

"A. The court instructs the jury that under the pleadings and evidence in this case, the plaintiff is not entitled to recover, and you will find your verdict for the defendant.

"C. The court instructs the jury that if you believe from the evidence that the injury to plaintiff's finger, which made necessary the amputation of the end of the finger, resulted from a bruise or blow, that then plaintiff can not recover, and your verdict must be for the defendant.

"D. The court instructs the jury that although you may believe from the evidence that the defendant was negligent, and that he delivered the plaintiff's carbolic acid, when he was asked for arnica, yet if you further believe from the evidence that the bottle had a legible label, showing the character of the contents as poisonous and that the character of the contents was open and obvious to the plaintiff, or to his wife or those caring for him and using the contents then and in that case the plaintiff assumed the risk of using the contents, and your verdict must be for the defendant.

"E. The court instructs the jury that, in order to recover in this case, the plaintiff must establish by a preponderance of the evidence: (1) That the boy, Leo Peterson, asked defendant for arnica, and made it clear to him that he wanted arnica. (2) That neither the defendant, nor his wife, nor Baird, the medical student, knew the character, appearance or effects of the use of carbolic acid. (3) That the injury of defendant resulted as a natural consequence from the act of the druggist. (4) That neither plaintiff, the plaintiff's wife, the medical student, Baird, nor the boy, Leo Peterson, were guilty of negligence that contributed to the injury of plaintiff. (5) That the injury resulting in the amputation of the finger did not result from some other cause than the use of carbolic acid. And unless you

find that all of the above was established by a preponderance of the evidence, your verdict must be for the defendant.

"F. The court instructs the jury that if you believe from the evidence that the defendant delivered the bottle to the boy, Leo Peterson, with a legible label marked 'carbolic acid,' that then plaintiff can not recover, and your verdict must be for the defendant."

The main contention of defendant is that, conceding he was negligent in giving the boy Leo carbolic acid instead of arnica, his negligence was not the proximate cause of the injury, that the negligence of Baird in not discovering the mistake when he picked up the bottle and looked at it after it had been filled and returned, and the failure of the plaintiff to notice or heed the label on the bottle, were acts of negligence that intervened between the selling and the using of the acid, and on account of these intervening negligences, the sale was not the proximate cause of the injury. The same label was on the bottle when it was returned as when sent to the defendant to be filled with arnica. Plaintiff saw the label on the bottle and knew what it was when he sent his son with it to the defendant for arnica. If he noticed the label when the bottle was brought back, he saw that no new label had been placed upon it, that the bottle was in the same condition as when sent, except it had been filled with what he supposed to be arnica. In these circumstances, we do not think the label apprised him of the fact that the bottle contained carbolic acid. Had defendant attached a new and fresh label advertising the contents of the bottle as carbolic acid, and plaintiff, without noticing the label, had used the acid or used it in disregard of the warning the label would have to convey, his injury might be attributable to his own negligence; but the label, under the facts of the case, did not advise the plaintiff of the contents of the bottle, and negligence can not be attributed to him for disregarding it. It seems strange that Baird, a medical student, when he

picked up the bottle and looked at it after it had been returned filled with carbolic acid, did not discover the mistake. But we do not think his negligence, if he was negligent, in failing to make the discovery, was an intervening negligence that precludes a recovery by plaintiff. Baird, in no sense of the word, was the agent of the plaintiff. Plaintiff did not employ him, or even solicit his advice. All that Baird did was to recommend an application of arnica to take the soreness out of plaintiff's finger and when the bottle was returned, to tell plaintiff how to apply it. If Baird had recommended carbolic acid and plaintiff had applied it, on his recommendation, then the error of Baird would have been the proximate cause of the injury. But Baird recommended a harmless drug. This drug, according to plaintiff's evidence, was called for by plaintiff's son and agent who was sent to defendant's drug store, and instead of furnishing the harmless drug, defendant negligently furnished a deadly poison and failed to attach a new label to advertise the contents of the bottle to be poison. It seems to us that under this evidence, his negligence was the proximate cause of the injury. That these were the views of the learned trial court, is clearly indicated by the instructions given to the jury.

The facts in this case are the very opposite of the facts in the case of Fowler v. Randall, 73 S. W. (Mo. App.) 931, cited and relied on by the defendant. In the Fowler case, the druggist supplied the drug (morphine) called for by the agent sent for it, and the person who used it and the agent both knew that morphine had been supplied. The injury (death) was caused by an overdose, not through ignorance of the drug or its effect upon the human system but through the negligence of the person who took it. In the case at bar, a poison was furnished when a harmless drug was called for and the poison was used by the plaintiff in the belief that he was using the innocent drug that had been sent for.

Defendant insists that the testimony of the druggist, that the boy called for carbolic acid, is more likely to be true than that of the boy who said he called for arnica. Whether or not the boy called for arnica, was the controlling issue of fact in the case. The jury found that he did call for arnica, that the mistake was made by the druggist. This finding was approved by the trial court and is conclusive on us as an appellate court.

The defendant moved the court to instruct the jury that, if they believed the injury that made it necessary to amputate plaintiff's finger resulted from the bruise, plaintiff could not recover. The court very properly refused this instruction for two reasons: First, because there was no evidence proving or tending to prove that the injury was so severe or involved so much of the finger as to necessitate amputation. Second, because the instruction entirely ignores the action of the carbolic acid on the finger. The other refused instructions may be dismissed with the remark that they did not correctly state the law of the case, and that those given did properly state the whole law of the case.

The judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.