## JENNIE KELLY, Respondent, v. A. Y. ROSS, Appellant.

**Springfield Court of Appeals, June 3, 1912. Motion for Rehearing Overruled, July 9, 1912.**

1. DRUGGISTS: Selling Wrong Medicine: Personal Injuries: Damages. In an action for damages against a druggist on account of injuries to plaintiff's hands from the use of a hand lotion, which plaintiff purchased from the defendant, the evidence is examined and *held* sufficient to uphold the verdict of the jury in plaintiff's favor, as it tended to show that the lotion was a poisonous liquid and unfit for use as a hand lotion.

2. APPEAL AND ERROR: Evidence: Demurrer. On appeal in considering a demurrer to the evidence all reasonable inferences from the testimony and from the appearances and conduct of the witnesses must be considered in aid of the verdict.

3. ———: ———: ———. A demurrer to evidence is sustainable only when the action pleaded is unsustained by any material evidence, or by any inferences reasonably to be drawn from the facts proven.

4. PLEADING: Selling Wrong Medicine: Unnecessary Allegations. In an action against a druggist for the sale to plaintiff of a hand lotion, which upon use burned and injured plaintiff's hands, the petition alleged that the lotion was a deadly poison and appellant contended that this was not proven, and therefore plaintiff's case should fail. The petition contained the

further allegation that plaintiff applied for a harmless lotion for her hands and was given a poisonous one, wholly unfit for use upon plaintiff's hands and which was harmful, etc. *Held*, that the allegation that the lotion was a deadly poison added nothing to plaintiff's cause of action.

5. **APPEAL AND ERROR: Motion for New Trial: Instructions: Specific Objections.** Where appellant in his motion for a new trial makes certain specific objections to the instructions given on behalf of the respondent, he impliedly waives all other objections and is confined upon appeal to the objections set out in his motion for a new trial.

6. ————: ————: **Bringing Errors to Notice of Trial Court.** It is elementary law that if errors are not brought to the attention of the trial court, in a motion for a new trial, they cannot be considered on appeal.

Appeal from Webster Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*Perry T. Allen* and *Mann, Johnson & Todd* for appellant.

(1) The court erred in refusing to give defendant's peremptory instruction at the close of plaintiff's case and again when offered at the close of all the evidence in the case. McGraff v. Transit Co., 197 Mo. 97; King v. Ringling, 145 Mo. App. 293; Fowler v. Elevator, 143 Mo. App. 422; Cothron v. Packing Co., 98 Mo. App. 348; Breen v. Cooperage Co., 50 Mo. App. 215; Morarity v. S. & S. Co., 132 Mo. App. 653; Frisbie v. Casualty Co., 133 Mo. App. 30; Saxton v. Railroad, 98 Mo. App. 494; Smart v. Kansas City, 91 Mo. App. 587. (2) The mere concurrence in time of two facts does not legitimately give rise to the inference that one is the result of the other. Smillie v. Dollar Store, 47 Mo. App. 406; Caudle v. Kirkbridge, 117 Mo. App. 412; Warner v. Railroad, 178 Mo. 134; Kirby v. Railroad, 146 Mo. App. 316. (3) Plaintiff specifically charges in her petition as a specific act of negli-

gence that defendant furnished her negligently, a poisonous fluid. Defendant's demurrer to the evidence should have been sustained for the reason that the rule *res ipsa loquitur* has no place in a case where specific negligence is alleged in the petition. Feed & Coal Co. v. Railroad, 129 Mo. App. 498; Feary v. Railroad, 162 Mo. 75; Gibler v. Railroad, 148 Mo. App. 475. (4) The appellate court will draw with a firm hand the line between tangible evidence and reasonable and legitimate deductions on the one hand and mere conjecture or speculation on the other. Glick v. Railroad, 57 Mo. App. 97; Bank v. Railroad, 98 Mo. App. 330. (5) We submit in all candor and fairness that the most diligent search of the testimony in this entire case will fail to uncover an iota of evidence to the effect that plaintiff's hands and health are permanently injured, and the giving of instruction number two was error. Pendenville v. Transit Co., 128 Mo. App. 596; Steinmetz v. Transit Co., 116 Mo. App. 673; Smedley v. Railroad, 118 Mo. App. 106; Cheneworth v. Sutherland, 129 Mo. App. 442. (6) Presumptions cannot be founded upon presumptions. They must be founded as we have already shown, upon known facts and principles common to human experience. Leffler v. Association, 127 Mo. App. 488; Chemical Co. v. Railroad, 78 Mo. App. 311; Bigelow v. Railroad, 48 Mo. App. 367; Moore v. Rennick, 95 Mo. App. 210; Ham v. Railroad, 149 Mo. App. 207.

*Neville & Gorman* for respondent.

(1) The liability for dispensing poisons instead of harmless preparations is well established. Fisher v. Galloday, 38 Mo. App. 531; Darks v. Grocer Co., 146 Mo. App. 246; Davis v. Guarnieri, 46 Ohio St. 470; Thomas v. Winchester, 6 N. Y. App. 397. (2) A party is held on appeal to theory presented at trial. Masterson v. Transit Co., 204 Mo. 57; Sawyer v. Walker, 204 Mo. 164. (3) Where party asks instructions sub-

mitting a certain issue to the jury, he cannot on appeal urge that peremptory instruction ought to have been given. Chandler v. Gloyd, 217 Mo. 416. (4) Defendant's peremptory instruction at the close of the evidence was not a demurrer to the evidence. He did not request the court to declare that there was no evidence that the liquid caused the injury, and his instruction asked and given informing the jury that they might find it from the evidence waived his right to urge error against the court's refusal to give it. Crum v. Crum, 231 Mo. 639.

GRAY, J.—This suit was instituted in the circuit court of Greene county, and on application of defendant, the venue was changed to Webster county, where the cause was tried before a jury, resulting in a verdict in favor of the plaintiff for $750, upon which judgment was duly rendered and defendant appealed.

Plaintiff alleged in her petition that in April, 1910, and for a long time prior thereto, the defendant was a druggist and pharmacist, and kept a stock of drugs and medicine for sale, and it was his business to compound and sell medicine and drugs for medical purposes; that at said time she applied at defendant's store for a bottle of harmless medicine, compounded and kept by defendant for sale, and known as "Hand Lotion," to be used on her hands to relieve them of a dry, rough and chafed condition; that the defendant undertook to furnish the plaintiff with said lotion, but instead thereof, carelessly and negligently furnished and sold to her "a deadly, poisonous liquid, wholly unfit for use upon plaintiff's hands and that said poisonous liquid sold to plaintiff by defendant's agent and employee as aforesaid was not only unfit for use upon plaintiff's hands but was harmful, destructive and dangerous to her hands and health."

The petition further alleged that defendant represented said medicine to her to be a hand lotion to be

used on her hands; that relying on said representations, she purchased a bottle of said hand lotion, and used and applied the same upon her hands and lips, and as a result thereof, her hands and lips were blistered and burned, and that her hands and fingers became swollen, "and the poison from said liquid became scattered through her body, and she was confined to her room and bed for eight weeks in a helpless condition and was unable to do any work for four months, to her damage in loss of wages in the sum of two hundred dollars, that she suffered intense physical pain and mental anguish and her hands and health permanently impaired and injured and that she paid and obligated herself to pay the sum of one hundred and twenty dollars for nursing, medicine and medical attention, all by reason of the use and application of said poisonous liquid as aforesaid, and all to her damage in the sum of twenty-five hundred dollars."

The answer admitted defendant was a druggist and kept a stock of drugs and medicine at Springfield, this state, but denied every other allegation.

It is appellant's first contention that the court erred in submitting the case to the jury. In determining this question, we are governed by the following rules: On appeal all reasonable inference from the testimony and from the appearance and conduct of the witnesses must be considered in aid of the verdict. [Heatton v. Dickson, 153 Mo. App. 312, 133 S. W. 159.] And that a demurrer to evidence is sustainable only in the absence of material testimony or reasonable inference. [Enloe v. American Car & Foundry Co., 144 S. W. 852.] Though plaintiff's testimony was vague and contradictory, the jury had the right to weigh it and pass on her credibility. [Ertel v. Warren, 138 S. W. 694.] An appellate court cannot interfere with the verdict because it was not sustained by a preponderance of the evidence. [Van Loon v. Van Loon, 140 S. W. 631.]

The plaintiff testified that one Saturday in April, 1910, she purchased from a clerk in defendant's store a bottle of his "Hand Lotion;" that she took it home and used some of it on her hands that evening; that she was in the habit of keeping some cold cream or something of that nature to put on her hands and lips; that she had used the lotion before and found it a good remedy; that she used it on her hands also the following Sunday and Monday nights; that at first her hands did not show anything out of the way, or that the medicine was injuring them, but in two or three days they commenced to get red and burn; that she used some of the lotion on her lips and they became red and sore, and scaled off; that she went to the defendant's store and saw him concerning the lotion she had used on her hands, and he remarked to her: "I don't see why the medicine should affect your hands in that way, unless it was not shaken up, it is a medicine that should be shaken well before it is poured out of the bottle."

The plaintiff testified that she was confined to her bed for five or six weeks, and during all of said time her hands were very red and swollen, and that they had a "scaley or burned appearance and looked like they had been soaked or cooked in something," and each hand was swollen to twice its ordinary size; that she had to hold her arms up all the time, and when she slept they had to be kept up by a pillow fixed to support them; that during all of said time she suffered intense pain, and that her whole system was affected thereby; that when she began to recover, she was so weak she could not walk alone; that no part of her body was affected except that on which the lotion was used; that there was a well-marked line around her wrists showing that the red, swollen, blistered and scaley condition was only on that part of the hands on which the lotion was used; that before she used the lotion on her lips, they were well and not

sore, but the medicine cooked and cracked them ,and they became swollen and the skin came off.

The plaintiff was corroborated by other witnesses as to the use of the lotion and the condition of her hands and skin, and also as to the extent and duration of her sickness.

The plaintiff also testified, and was corroborated that her sister had been to a high school picnic, and her arms had become sunburned, and that she used some of the lotion on her arms where they were sunburned, and also where they had not been burned by the sun, and that her arms became red and broke out in yellow blisters, and that scales appeared, and that this condition existed wherever the lotion was applied.

The defendant attempted to prove that plaintiff was afflicted with eczema, and that the lotion was harmless and was not the cause of her trouble. An effort was made to prove that plaintiff had previously suffered with eczema, but this was denied by her and her mother, who claimed that plaintiff had never had any skin trouble except that little pimples had appeared on her face from time to time, but they never had caused her any pain, and were only such pimples as are commonly seen on person's faces.

It also appeared from the testimony that plaintiff's hands were treated by a physician. The physician was not called by her and was not present at the trial, but while defendant was introducing his testimony, and as a part thereof, the statement of the physician was read and it was admitted that if present, he would testify that he was called by the plaintiff to treat her, and she complained of soreness of her hands and lips; that the affliction she suffered with at that time was eczema, and that plaintiff told him she had had eczema once before. It was further admitted that the physician would testify, if present, that the

hand lotion did not cause the sores on plaintiff's hands and lips, but that she was suffering from eczema.

The plaintiff testified in rebuttal that she did not tell the doctor that she had eczema, and also that the doctor told her when she first called to see him that she had a kind of eczema, caused by the medicine put on her hands.

The plaintiff further testified that the doctor told her that the poison had gone through her system, and affected her nerves. Several witnesses testified that they saw the plaintiff's hands at her home while she was in bed, and that they were swollen and looked like they had been burned. Without setting out all of this testimony, we quote the following from one witness, who lived next door to plaintiff, and saw her while she was suffering from the condition of her hands. This witness testified: "Her hands were very much swollen. They were very red up to say an inch above her wrists. The skin above that on her arms clear and unmarked. There was a well defined line. I am a machinist and occasionally use an acid to solder and some acids to remove scales. I am familiar with the effects of acids and they will burn the hands. In the palms of both her hands, the skin was almost all loose and some of it seemed to be in shreds; on some parts the skin seemed to be calloused and the skin thick; some parts were blistered but the skin adhering yet. They looked to me like as though they had been burned in some way with something resembling an acid."

The testimony further disclosed that in using the lotion, the plaintiff poured it from the bottle into the palm of her hand, and that that part of the hand was in the worst condition. It is upon this testimony that the defendant claims that plaintiff's testimony does not tend to prove that there was anything wrong with the lotion, or that it caused the injuries for which she sues.

Kelley v. Ross.

The defendant's testimony to the effect that plaintiff might have been suffering with eczema, and therefore, it was that disease and not the medicine, that caused her trouble, is contradicted by some physical facts in the case. We refer to the uncontradicted testimony that it was just the parts of the body on which the lotion was used that became red, swollen, blistered and sore. The plaintiff's testimony, if believed, disclosed that the sister used the lotion on her arms, and they, also, just where the lotion was used, showed similar conditions to plaintiff's hands and lips where the same was used. This, certainly, was some testimony to the effect that plaintiff's condition was due to the use of the lotion. The defendant offered testimony tending to prove that if plaintiff was suffering from eczema, that the use of the lotion, though harmless, would aggravate the disease. Granting this to be true, it is not claimed that plaintiff's sister was suffering from eczema, and it is strange that it had the same effect upon her, and that no signs of the disease appeared except on the identical spots where the lotion had been applied.

The jury and trial judge saw the plaintiff and her witnesses and heard them testify, and were in a better position than we are to determine the weight of the testimony and the credibility of the witnesses.

It is further claimed that there was no testimony that the lotion was a deadly poison. It was not necessary for the plaintiff to prove that it was a "deadly poison," and the word "deadly," added nothing to plaintiff's petition or cause of action. The important and material allegation of the petition is, that plaintiff applied for a harmless lotion for her hands, but was given a poisonous one "wholly unfit for use upon plaintiff's hands, and was harmful, destructive and dangerous to her hands and health."

If the lotion had the effect that plaintiff's testimony tends to show, then it was a poisonous liquid.

Webster defines "poison" as follows: "Any substance which, when introduced into the animal organism, is capable of producing a morbid, noxious, or deadly effect upon it." If plaintiff's testimony is true and the lotion had been applied to her entire body, there is no question but what it would have caused her death, as we know from common experience that you cannot kill the entire skin on the human body without destroying life.

Defendant's second assignment of error, is, that plaintiff's instruction No. 2 on the measure of damages, is erroneous, because it permits the jury to allow plaintiff for permanent injuries, when the evidence failed to show that she had sustained such. The motion for new trial complained of this instruction, but only on the ground that it was misleading, and was lengthy and likely to deceive and mislead the mind of a person not learned in the law. The objection now made is not in the motion for new trial.

In Sheets v. Railroad, 152 Mo. App. 376, 133 S. W. 124, we said: "The parties should point out to the trial court the specific errors or defects complained of, and give that court an opportunity to correct the same before appealing to the higher tribunal." It is elementary law, that if error is not brought to the attention of the trial court in a motion for new trial, it cannot be considered on appeal. [Aultman v. Taylor Machinery Co., 149 Mo. App. 102, 129 S. W. 1023; Dorris v. Dorris, 149 Mo. App. 107, 129 S. W. 979.] By making certain objections to the instruction in the motion for new trial, defendant impliedly waived the others, if any there were.

The last objection is to plaintiff's instruction No. 1. In appellant's brief, it is said: "The only way this instruction can be justified is by founding a presumption upon a presumption." And it is further said that there was no valid evidence upon which to found the instruction. The motion for new trial

pointed out certain alleged defects in the instruction as follows: ''That part of the instruction defining negligence; and second, that the language used in the first part of the instruction is argumentative and misleading. It will be noticed that neither of these objections is made in this court, and that the objection now made was not made in the trial court.

We do not agree with appellant's counsel that plaintiff's case can only be upheld on the theory that one presumption may be founded upon another presumption. The plaintiff testified that her physician told her the condition of her hands was due to the use of the lotion. It is true this was hearsay, but it went in without objection, and therefore, its weight was for the jury. In addition to this, it was admitted by all parties that the hand lotion sold by the defendant was ordinarily a harmless medicine and beneficial to the skin, and yet, wherever the ingredients of the bottle plaintiff purchased came in contact with the arms or hands of the plaintiff, or those of her sister, the effect was very injurious, and just the opposite expected from the use of the lotion when properly prepared.

It is not strange that the jury did not believe that the condition of plaintiff's arms and lips, and the condition of her sister's arms, were due to the fact that both the girls were suffering with eczema, and just the kind of eczema that this particular lotion aggravated. This might have been true, but it was a question for the jury, and not the appellate court.

The judgment will be affirmed. All concur.