No. 12,074.

Campbell *v.* Stamper Drug Co.

Decided April 29, 1929. Rehearing denied May 27, 1929.

Messrs. COEN & MALLORY, Mr. LIONEL L. FISHER, Messrs. COEN & SAUTER, for plaintiff in error.

Mr. STOTON R. STEPHENSON, Messrs. MELVILLE, MELVILLE & TEMPLE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PARTIES here appear as in the lower court.

Upon motion for a nonsuit, the lower court directed a verdict for the defendant. Plaintiff contends that this was error and that the court erred in permitting the cross-examination of the witness Robert Kelley to be extended to cover matters and circumstances not touched upon or included within the scope of the direct examination of said witness.

The complaint is in two causes of action. The first cause of action charges, in substance, that on the 15th day of March, 1927, W. M. Campbell, husband of plaintiff, entered the drug store of defendant at Fort Morgan, Colorado, and sought to purchase from Robert Kelley, a clerk of defendant, a quantity of quinine; that said clerk negligently delivered to said Campbell a poisonous drug known as strychnine; that thereafter Campbell, partaking of same, died as a result of strychnine poisoning; that by reason thereof, the plaintiff, widow of the deceased, having been wholly dependent upon him for support, is entitled to damages in the sum of $5,000.

The second cause of action incorporates the charges in the first cause of action and alleges that in the sale and delivery of said strychnine to W. M. Campbell, the defendant failed to comply with the provisions of section 4598 of the Compiled Laws of Colorado, 1921, in that defendant did not, before delivering said strychnine to W. M. Campbell, make, or cause to be made, an entry in any book whatever, stating the date of sale, the name and address of the purchaser, the name and quantity of the poison sold and delivered as aforesaid, the purpose for which it was represented by the purchaser said poison was required, nor the name of the dispenser of such poison, and that the dispenser of said poison did not satisfy himself that said W. M. Campbell, was aware of the poisonous character of the strychnine sold and de-

livered to him as aforesaid, nor that said strychnine was to be used for a legitimate purpose, before delivering the same to W. M. Campbell, as aforesaid.

The answer denies the charges in the complaint and alleges that the deceased ordered strychnine and further charges that plaintiff's husband's death was caused by the negligence of the deceased in failing to exercise reasonable care, by which he could have determined the poisonous character of the contents of the bottle delivered to him, and that the plaintiff was also guilty of contributory negligence in likewise failing to determine the poisonous character of the contents of the bottle so delivered, before placing it in a capsule and delivering it to the deceased for his consumption at his request.

The evidence disclosed the following facts: Robert Kelley, plaintiff's witness and defendant's employe, testified: "Q. And you are the clerk that waited on Mr. Campbell? A. Yes, sir. Q. Did you say anything to him that night, or he to you about the dangerous character of strychnine? A. No, sir. Q. Did he say anything to you about what purpose he intended to use the strychnine for? A. No, sir."

On cross examination this witness was permitted to detail the circumstances surrounding the purchase of said strychnine, which is here assigned as error. This cross-examination, among other things developed the following: "Q. Tell us the circumstances concerning Mr. Campbell coming in and purchasing this strychnine. A. Mr. Campbell came in that night in a hurry, * * * 'Bob, I would like to have a small bottle of strychnine.' I turned and went to the back room, to the prescription case, * * * I started to wrap up this strychnine for him, and he says, 'No, don't wrap it up, I am in a hurry.' I laid down the strychnine and told him it was forty cents. He held up two packages of gum he had gotten while I was gone and laid down fifty cents and went out in a hurry."

The witness thereupon made the following entry in defendant's poison record:

| Day of Month | To whom Delivered | Address | Quantity | Kind | Purpose Represented | By whom Delivered |
|---|---|---|---|---|---|---|
| 2/15/27 | Wm. Campbell | Ft. Morgan | 1/8 z. | Strych | Rats | R. K. |

The strychnine sold to the deceased was contained in an eighth ounce oval bottle wrapped in red paper upon the outside of which was a white sticker, one inch by one and three-eighths inches, inscribed thereon in red letters one-eighth of an inch high were the words "Strychnine Sulphate," below which appeared the word "powder," a skull and crossbones, on each side of which was the word "poison" in smaller print. The quinine kept for sale by the druggist was contained in round bottles slightly larger in size and covered with white oiled paper. The strychnine and quinine were kept in the same prescription cabinet, the strychnine on the top shelf and the quinine on the shelf immediately below. After leaving the drug store, the deceased and his wife attended a church meeting and upon returning home the deceased said to his wife, "Here's this quinine; fill me up a capsule." And the plaintiff, who was blind in one eye and had poor vision in the other, who could not read without the use of glasses and who did not have her glasses on at the time, proceeded to open the package with an ice pick, tearing a portion of the red wrapper from the bottle and, pouring part of the contents on a paper, filled a capsule therewith and handed it to her husband who retired to the bathroom and swallowed the same. Shortly thereafter, he was taken with convulsions. He said, "Go and see what was in that bottle; I believe they give me poison instead of quinine." Whereupon the plaintiff examined the bottle and found that her husband had taken strychnine. Dr. Williams was immediately called. He testified that the deceased said to him, "Those fellows gave me strychnine for quinine." Emergency treatment failed to

revive the deceased and he died shortly after the doctor arrived.

Section 4598 of the Compiled Laws of Colorado, 1921 is as follows: "Every person who shall dispose of or sell at retail or furnish any poisons included under schedule A shall, before delivering same, make or cause to be made, an entry in a book kept for the purpose, to be furnished by the state board of pharmacy, stating the date of sale, the name and address of the purchaser, the name and quantity of poison, the purpose for which it is represented by the purchaser to be required, and the name of the dispenser, such book to be always open for inspection by the proper authorities and to be preserved for at least five years after the last entry. He shall not deliver any of said poisons without satisfying himself that the purchaser is aware of its poisonous character, and the said poison is to be used for a legitimate purpose. This section shall not apply to the dispensing of medicines or poisons on physicians' prescriptions. Articles named in schedule B shall only be dispensed with the red caution label affixed, with the word "poison" plainly printed thereon.

"Schedule A. Arsenic, hydrocyanic acid and its salts, cocaine, morphine, strychnia, and all other poisonous vegetable alkaloids and their salts, oil of bitter almonds, opium and its preparations, except paregoric and such others as contain less than two (2) grains to the ounce.

"Schedule B. Aconite, belladonna, cantharides, colchicum, conium, cotton root, digitalis, ergot, hellebore, henbane, phytolacca, strophanthus, oil of tansy, oil of pennyroyal, oil of savine, veratrum viride, and their pharmaceutical preparations, arsenical solutions, carbolic acid, chloral hydrate, chloroform, corrosive sublimate, creosote, croton oil, mineral acids, oxalic acid, paris green, salts of lead, salts of zinc, white hellebore."

The foregoing summarizes the salient evidence necessary for a determination of the assignments of error.

There is no merit in plaintiff's contention that the court erred in permitting witness, Kelley, to testify on cross-examination as to the circumstances in connection with the sale of strychnine to the decedent. Kelley was plaintiff's witness and testified to the sale on direct examination. On cross-examination, it was perfectly proper for defendant to show all the circumstances in connection with said sale.

We are of the opinion that the court erred in holding that the plaintiff and her husband were guilty of contributory negligence as a matter of law in failing to determine that the bottle delivered by the defendant's clerk contained strychnine instead of quinine and accordingly directing verdict for the defendant.

The uncontroverted evidence discloses that Campbell had no intention of committing suicide; that when he took the fatal capsule, he believed he was taking quinine; that Kelley, defendant's agent, sold Campbell strychnine; that in said sale, Kelley failed to comply with section 4598 of the Compiled Laws of 1921, supra, in that before delivering said strychnine poison, he failed to make an entry in a book kept for that purpose; that said poison was delivered to Campbell without Kelley satisfying himself that the purchaser was aware of its poisonous character and that it was to be used for a legitimate purpose.

Proof of the violation of said statute, such as here shown, is sufficient to make out a prima facie case of negligence against the defendant. The legislature undoubtedly intended to prevent a person from purchasing poison for self destruction; also to surround a purchaser of drugs with every possible safeguard against mistakes occasioned by misinformation, lack of information, mispronunciation or arising out of the similarity of the sound of names of poisons and harmless drugs. It was not a sufficient compliance with this statute to show that the strychnine in question was wrapped in red and labeled "poison." To hold otherwise, would nullify the other statutory requirements.

In 19 C. J. 780, 781, the following appears:

Sec. 46. "Where a statute of a public character prescribes, in regard to a certain class of persons, precautions for the health and safety of others, the neglect of such statutory precaution gives a right of action to any person within the scope of the intended benefit who by reason of such neglect suffers damages of the kind intended to be provided against. The failure to observe such statutory regulations is per se neglect of duty as well as want of care."

Sec. 49. "A druggist who negligently delivers a deleterious drug when a harmless one is called for is responsible to the customer for the consequences, as being guilty of a breach of the duty which the law imposes on him to avoid acts in their nature dangerous to the lives of others. The liability of the druggist in such case is not affected by the fact that he may also be subject to criminal prosecution, nor by the facts that the one purchasing the drug does not disclose the person for whom he is making the purchase."

A prima facie case of negligence against the defendant having been made out, it was error for the court to direct a verdict unless the evidence of the plaintiff affirmatively showed that either she or her husband was guilty of contributory negligence as a matter of law.

Kelley did not ascertain for what purpose the poison was represented to be required, and did not satisfy himself that Campbell knew he had received a deadly poison, and that it was to be used for a legitimate purpose. Merely to believe, is not to satisfy one's self. Webster's New International Dictionary defines the word "satisfy" as follows: "4. To free from doubt, suspense, or uncertainty; to give assurance to; to set at rest the mind of; to convince; as, to satisfy one's self by inquiry."

The statute required that before selling any poison (among other requirements) there be recorded "the purpose for which it is represented by the purchaser to be required." Obviously, this information could be obtained

only upon inquiry. Accordingly it is a reasonable inference that the legislature intended to use the expression "satisfying himself" in the sense of "convincing himself upon inquiry." This being correct, the only way Kelley could satisfy himself was to inquire. If an inquiry had been for either purpose, Campbell would have ascertained that he had received a deadly poison and his death would have been avoided.

Notwithstanding the fact that Kelley testified that Campbell asked for and was given strychnine, Campbell intended to purchase quinine. He unintentionally asked for strychnine or Kelley misunderstood him and thought he said strychnine. Believing that he had received quinine and knowing that quinine was a non-poisonous drug, he failed to examine the bottle and its contents. Knowing that her husband had gone to the drug store for the purpose of purchasing quinine and had returned home with a bottle which he said contained quinine, upon being requested to fill a capsule from the contents of this bottle, and believing that it contained quinine, she failed to take steps which she might otherwise have taken to determine its contents. These facts directly resulted from Kelley's failure to ascertain the purpose for which the poison was required, and to satisfy himself that Campbell knew that he had received poison, and that it was to be used for a legitimate purpose. The failure to make inquiry placed Campbell in a position of danger, unknown to him, of thinking he had obtained a harmless drug, thereby causing him to lessen the vigilance he otherwise might have exercised.

Under these circumstances, the rule of law applied in the case of *Phillips v. Denver Co.*, 53 Colo. 458, 465, 128 Pac. 460, is controlling. "It is equally certain that this court has never held that a plaintiff was guilty of contributory negligence, as a matter of law, when some fact or element was present that tended to lull the plaintiff into a sense of safety, and caused him to perform or fail

to perform the act or acts upon which the contributory negligence was sought to be predicated.''

Under the facts, reasonable men might differ as to whether reasonable care was used. In such cases, the question of contributory negligence is for the jury. *Arps v. Denver,* 82 Colo. 189, 257 Pac. 1094; *Denver Alfalfa M. & P. Co. v. Erickson,* 77 Colo. 583, 239 Pac. 17; *Phillips v. Denver Co.,* 53 Colo. 458, 128 Pac. 460; *Janeskie v. Kaib,* 76 Colo. 148, 230 Pac. 392; *Williams v. Sleepy Hollow Mining Co.,* 37 Colo. 62, 86 Pac. 337; *McDaniels v. Sell B. & C. Co.,* 68 Colo. 202, 187 Pac. 731; *Rocky Mt. Fuel Co. v. Tucker,* 72 Colo. 308, 211 Pac. 383; *Goody-Courter Coal Co. v. Connor,* 85 Colo. 151, 274 Pac. 739.

The question of what constitutes contributory negligence as a matter of law in cases of this character has never been determined in this jurisdiction. In other jurisdictions, however, this question has been considered and determined in accordance with our views herein set forth.

In *Hendry v. Judge & Dolph Drug Co.,* 211 Mo. App. 166, 245 S. W. 358, the plaintiff upon applying for Rochelle salts was given Roachsault, a poisonous insecticide. It was there contended that plaintiff was guilty of contributory negligence as a matter of law in failing to examine the label on the box disclosing the nature of its contents. The court states at page 172:

''The defendant in selling the drug in question impliedly warranted that it was the article called for and purchased by the plaintiff. The evidence is conclusive that plaintiff was not aware of the poisonous character of the article delivered to her, when she partook of it, but relied on the defendant's warranty to furnish the article called for. The substitution of the poisonous for the harmless article rendered the defendant liable to the plaintiff for injury proximately resulting from its negligence or breach of duty.

\* \* \*

"The plaintiff herself removed the wrapper from said can and opened same. She therefore must have looked at the can but did not inspect it sufficiently to discover anything suspicious to invite further investigation.
\* \* \*

"Under the facts in this case we cannot say that the court should have declared that the failure of plaintiff to read or examine the label, attached to the can, constituted negligence *as a matter of law.* [*Fisher v. Golladay,* 38 Mo. App. 531; *Kelly v. Ross,* 165 Mo. App. 475, 148 S. W. 1000; *Peterson v. Westman,* 103 Mo. App. 677, 77 S. W. 1015; 9 R. C. L. sec. 9, p. 703; *Moran v. Dake Drug Co.,* 134 N. Y. (Supp.) 995; *Brunswig v. White,* 70 Tex. Sup. 506, 8 S. W. 85; *Knoefel v. Atkins,* 40 Ind. App. 428.]"

In *Moran v. Dake Drug Co.,* 134 N. Y. Supp. 995, a clerk delivered bichloride of mercury tablets instead of triple bromide tablets requested. The court, in holding that the question of contributory negligence was for the jury stated at page 997: "As to plaintiff's negligence, that was equally for the jury, for I suspect that the time has not yet come when if a man calls for a particular remedy at a drug store, and he fails to read any writing the clerk may put on the package, that it can be said as a matter of law that by such a failure the plaintiff is guilty of contributory negligence. All he was obliged to do was to act and do what a reasonably prudent man should do under similar circumstances, and whether or not plaintiff in this case did act as a reasonably prudent person under the circumstances, was for the jury."

The question of contributory negligence, under the facts in evidence, was for the jury. The trial court erred in directing a verdict for the defendant. The case is accordingly reversed with directions to set aside the judgment and order a new trial in harmony with the views herein stated.