[No. 5313.]
[No. 2951 C. A.]

THE DENVER CITY TRAMWAY COMPANY v. MARTIN.

1. **Municipal Corporations — Ordinances —** An ordinance requiring warning to be given of the approach of a street car to a street crossing is valid.—P. 330.

2. **Pleading—What Must Be Averred—**In an action against a street railway company for an injury to a traveler at a street crossing, an ordinance of the municipality requiring those controlling a car to give a signal when approaching a street crossing is admissible, though not pleaded.—P. 330.

3. **Appeals — Error Without Injury —** The exclusion of evidence already before the jury is not injurious.—P. 330.

4. **Contributory Negligence—**A traveler ignorant of the locality, and having no notice of the presence of railway tracks upon a particular street which he is approaching in the nighttime, is not, as a matter of law, guilty of negligence in not stopping to look and listen.—P. 333.

5. **Street Railway Company — Duty at Street Crossings —** One in control of a street railway car must, in approaching a street crossing, proceed with such caution as to reduce to a minimum the danger to the traveler who may be passing there. —P. 334.

6. **Evidence—Res Gestae—**Expressions of pain made by an injured person immediately after the injury are part of the res gestae.—P. 336.

7. **Damages—Mental Suffering—**Fright and mental pain resulting from or connected with a personal injury are to be compensated. What amount shall be allowed must be left to the jury, and they may award such reasonable sum as, in view of all the circumstances, may to them seem meet and right.—P. 337.

*Appeal from Denver District Court.*
*Hon. F. T. Johnson, Judge.*

Mr. CHARLES J. HUGHES, Jr., Mr. GERALD HUGHES, Mr. ALBERT SMITH, and Mr. H. S. ROBERTSON, for appellant.

Messrs. RICHARDSON & HAWKINS, and Mr. G. P. NEVITT, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This was an action to recover for personal injuries alleged to have been received by appellee (plaintiff below) through the negligence of the employees of appellant in the operation of a street car.

The complaint was in two counts. The first alleged that the defendant carelessly and negligently caused one of its motor cars to approach a crossing of two streets, and pass rapidly over the track, and carelessly and negligently omitted its duty, on approaching said crossing, by failing to give any warning signal, either by sounding a gong on said car, or in any other manner, by reason whereof plaintiff was wholly unaware of the approach of said car, and, as the result thereof, the accident happened out of which the injuries sued for by plaintiff arose.

The second cause of action averred that defendant violated the provisions of a certain ordinance of the City of Denver which makes it the duty of the motorman on any street car, when approaching any street crossing, to ring or sound a gong or bell within a distance not exceeding sixty feet from such crossing, by reason whereof, and through the negligence of defendant, a collision between the street car and the vehicle in which plaintiff was traveling occurred at the crossing, and consequent injuries to plaintiff.

About nine o'clock of the evening of July 4th, 1902, plaintiff, with her husband and a lady and gentleman friend, were returning from an excursion to the country in a two-seated canopy-top surrey, drawn by two horses; the husband was driving; no question as to his competency as a driver was presented; plaintiff occupied a place on the seat with her husband, at his left. The vehicle was being driven east on West Seventh Avenue towards South Water Street, which it intersected at right angles. Upon the latter street, defendant was operating a double-track electric railway, the cars on the east track running north, and the cars on the west track running south. At the southwest corner of Seventh Avenue and South Water Street, there was a building which came out to the lot line, which prevented the motorman from seeing the vehicle, and the occupants of the vehicle from seeing the car, until the vehicle had passed the lot line. The plaintiff and her husband were entirely unfamiliar with that part of the city, and did not know of the existence of the street-car tracks on South Water Street. The team, which was a gentle one, was being driven at a gait of five or six miles an hour, and, at the time they arrived at the intersection of the streets, was some-

what nervous, by reason of the previous explosion of fireworks along the street.

The evidence disclosed that the team was being driven north of the center of Seventh Avenue, which, at that point, was eighty feet wide. After the team had crossed the first, or southbound track, and while the vehicle was on the northbound track, it was struck by a motor car, carried a distance of from twenty to forty feet, according to the testimony of the different witnesses, overturned, and plaintiff was thrown to the ground and taken from underneath the fender of the car in an unconscious condition, having received injuries which are the basis of the action.

The husband testified that he did not know of the existence of street-car tracks on South Water Street; that he heard no gong, bell or other signal of warning, before he attempted to make the crossing; that he was looking out for anything which might scare the team; that he did not see the motor car, and knew nothing of its presence until immediately following a scream from his wife, when the collision occurred.

The plaintiff testified that she knew nothing of the existence of the tracks on South Water Street, heard no gong, and did not see the headlight of the car until immediately preceding the collision, after which she became unconscious.

The gentleman who was riding with the plaintiff and her husband, occupying the rear seat of the vehicle, testified that he heard no gong, bell or other warning signal, and did not see the motor car until immediately preceding the accident; and this witness testified that the car was proceeding north on South Water Street at a very high rate of speed.

The evidence shows that there was an electric light at the intersection of the two streets; that the

night was quite dark, there having been slight showers during the day and evening.

The motorman testified that he had been a motorman for the defendant for the period of about two months preceding the accident; that he was an extra man, running cars whenever there was an opening for him; that he left the car barns at about nine o'clock, with instructions to get to the central loop as quickly as possible; that the car was not taking on passengers; that the current on the motor at the time of the accident was up to the top notch; that the car was going at the rate of about ten miles an hour; that it was impossible for him to see the team approaching South Water Street until it had passed the lot line of the street; that he sounded the gong within sixty feet of the street crossing; that, after he realized that the team was going to cross ahead of the car, he rang the gong, shut off the power and applied the brakes; that he first saw the team when his car was twenty feet back from the inner line of the sidewalk, and proceeded to make application of the brakes, which were in first-class condition and took immediate hold; that he sounded the gong several times previous to the time of the collision; that the carriage was struck about half way between the center and the north side of the street; that a car equipped as that car was equipped, running at the rate of ten miles an hour, could be stopped within forty feet.

The conductor testified that he had had experience as a motorman; that, at the sound of the gong, his attention was attracted, and he looked up and saw the carriage and the team, which he located at about the place where the motorman had located it; that, equipped as the car was, and going at the rate of nine or ten miles per hour, when danger suddenly appears, the car could be stopped at twenty to thirty

feet, and at other times at a less distance; that ordinarily he would want about thirty feet in which to stop the car, and that, in cases of emergency, he had stopped a car running twelve miles an hour in twelve feet.

The conductor could not testify as to the gong having been sounded within less than sixty feet of the crossing, although he did testify that it was his recollection that the gong was sounded somewhere within the block. At the sounding of the gong at the crossing, he looked out, saw the team and vehicle, and immediately the collision occurred; that the car 'was not taking on passengers, and had been running a distance of seven blocks before the collision occurred.

The testimony of other witnesses introduced by plaintiff was to the effect that no gong was rung or sounded until immediately preceding the accident. The conductor and motorman agreed that, after the collision occurred, the vehicle was carried a distance of about twenty feet before the car was finally stopped. Witnesses for the plaintiff testified that the vehicle was carried thirty or forty feet after the collision, before the car finally stopped.

As stated, the complaint was in two counts. At the conclusion of the evidence, plaintiff withdrew the second count, based on the alleged violation of the ordinance requiring the motorman to sound the gong. Thereupon, defendant moved to strike from the evidence the ordinance introduced by plaintiff, which motion was denied. This ruling, and instruction 8, to the effect that the jury were at liberty to consider whether or not the evidence showed the ordinance to have been violated, for the purpose of determining the negligence of the company with respect to the accident complained of, will be considered together.

It is said that, by the withdrawal of the second

cause of action, the only foundation for the introduction of the ordinance in evidence was eliminated from the case, and for this reason, the motion to strike should have been granted, and instruction No. 8 should not have been given. Municipal ordinances requiring suitable and seasonable warning to be given of the approach of street railway cars are reasonable and proper regulations, and such ordinances, supplemented by other proof, are competent evidence in an action to recover damages alleged to have been sustained by reason of the negligent conduct of the defendant in operating its cars. In such case, it would be no more necessary to plead the ordinance than it would be to plead any other evidence upon which plaintiff relied for a recovery.

The first count pleaded the failure to sound the gong, or give any other warning of the approach of the car. Under this allegation, the ordinance was admissible to sustain this count.—*Griffith v. Denver Consolidated Tramway Co.*, 14 Col. App. 504, 508.

Further, the defendant, as part of its case, introduced in evidence the complaint, which set forth a copy of the ordinance, thus placing it before the jury. The motion to strike did not include this evidence introduced by the defendant. So that, if there was error in the ruling, it would have been without prejudice to defendant.

In appellant's opening brief, it is strenuously insisted that the negligence of the driver of the vehicle—being the husband of plaintiff—was imputable to plaintiff, upon the theory that the mere existence of the marital relation between the driver and the plaintiff brings plaintiff within the doctrine of imputable negligence.

The argument in support of this position assumes that the husband was guilty of such contributory negligence as would have precluded a recovery

if he had been plaintiff. If the correctness of this assumption should be admitted, under some of the authorities, it would then become necessary to determine whether or not plaintiff was guilty of such contributory negligence on her part as would prevent a recovery by her, notwithstanding we should decide that the negligence of the husband was not imputable to the wife.

A determination of this latter question would necessitate an examination of practically the same questions of law and fact as would be involved in a determination of the question, whether or not the husband was guilty of contributory negligence. We prefer, therefore, to determine the latter question, and await a determination of the former until it is squarely presented by the facts.

In the reply brief, appellant takes the position that the facts of this case bring it within the exception to the rule of imputable negligence, as stated in *C. & S. Ry. Co. v. Thomas,* 33 Colo. 522:

"But there is a well-recognized exception to this rule when the injured person is in a position to exercise control or authority over the driver, or is guilty, or fails to exercise such care under the circumstances as he could and should exercise under the particular circumstances, to protect himself."

This change of position is an additional reason for pursuing the course we do.

It appearing from the testimony of the motorman that he could stop a car equipped as this car was, running ten miles an hour, within a distance of forty feet; and it also appearing from his testimony that, from the point where he first saw the vehicle to the point where the car was finally stopped after the collision, not less than eighty feet intervened, one, if not all, of the following conclusions seems inevitable, viz: (1.) The car was running at a much

greater rate of speed than ten miles an hour; (2) the motorman did not use ordinary care and diligence in applying the means at his command to avoid the collision; or, (3) that the motorman did not exercise that care and diligence required by the law to ascertain and know that the track ahead was clear, and that he did not see the vehicle until immediately preceding the instant when the collision occurred.

The very violence of the impact, sufficient to carry the vehicle a distance of twenty to forty feet, overturning and wrecking it, was strong evidence which tended to show the extraordinary speed of the car, without which the motorman might, in the exercise of ordinary care, have brought the car to a stop, or, at least, have abated its speed sufficiently to have avoided the collision which resulted in plaintiff's injuries, and it would also indicate that the speed of the car had not been appreciably lessened at the instant of the collision.

Viewing the testimony as we do, with the aid of a plat which was filed as an exhibit in the case and is in the record, we are firmly convinced that the evidence of the defendant's witnesses warranted the jury in finding defendant guilty of negligence upon all three propositions above stated.

We also believe that the evidence shows that the gong was not sounded until immediately preceding the accident. This conviction is strengthened by the testimony of a witness introduced by defendant, to the effect that motormen do not make a practice of sounding the gong within sixty feet of street crossings, except in the busy district or portion of the city.

In view of the testimony of the husband of plaintiff, and the other occupants of the vehicle, that they were unfamiliar with the locality and did not know of the existence of the railway tracks on South

Water Street, the tracks being laid at the surface of the street, with nothing to indicate to one approaching the street that railway tracks were laid thereon, the question whether or not the gong was sounded, as required by the ordinance, became a very material one in this case, as a warning signal of some kind was the only method by which the occupants of the vehicle could have been apprised of the existence of the railway tracks upon the street at that crossing.

If the driver of a vehicle along the streets of a city does not know of the existence of street railway tracks upon the street which he is about to cross, and there is nothing in the physical conditions to impute to him such knowledge, no warning signal being sounded, the law does not impose an absolute duty upon him to look and listen for an approaching car before attempting to make the crossing, and for failure so to do he is not chargeable with contributory negligence which, as a matter of law, would prevent a recovery. The driver of a vehicle upon the streets of a city has an equal right with the street railway company to the use of streets at street crossings, and has a right to rely upon the law which requires the street railway company to give timely warnings of the approach of a car.

It will be found, upon examination, that the cases which hold that it is the duty of one attempting to cross a steam railway track to stop, look and listen, and that a failure so to do is, as a matter of law, contributory negligence, preventing a recovery, are, almost without exception, cases in which the person attempting to make the crossing knew of the existence of the railway, or, from the existing physical conditions, such knowledge was imputed to him. The duty to look and listen for an approaching street car before attempting to cross a street railway track must depend upon the circumstances of the case

under consideration; no hard and fast rule can be adopted to control all cases.

Conceding that the railway company has a preferential right to the use of that portion of the streets of the city upon which its tracks are laid, the rules governing such right are well stated in *Denver City Tramway Co. v. Norton*, 141 Fed. 599, 605, a case cited by appellant:

"It is to be conceded that, while the street railroad company has this preferential right of way, it has no right to proceed upon the assumption that it may take no heed of the probability of encountering, at such crossings in a city, vehicles and the like, which have the right to use the crossing as a common highway. The motorman, in control of the operation of his car, must, at all times, in approaching such crossings, proceed with such care and caution as, while subserving the public in rapid transit, he can reduce to the minimum the danger to others entitled to its contemporaneous use. The law of Colorado did not undertake to define the rate of speed at which a street car may run. It did exact of the motorman a degree of vigilance commensurate with the probable danger to others using the crossing at that hour of the night. While the evidence in this case tends to show that, at the time of night when this accident occurred, this crossing was infrequently used by vehicles, and this fact should be taken into consideration by the jury in determining the question of the motorman's negligence, the fact that vehicles were liable to use the crossing at any time laid upon him the duty of keeping a lookout for their approach, and to so have his car under such control, with the appliances at his command, that he could stop it within a reasonable time to avoid collision with a vehicle driven with reasonable care."

In *Philbin v. Denver City Tramway Co.*, 36 Colo.

331, some of the rights of a pedestrian or driver of a vehicle to the use of the streets, upon which the street railway company operates its cars, are thus stated (p. 335):

"It is not negligence for a person to drive across street railway tracks, whenever and wherever he may have occasion to do so, and this right of crossing the tracks is not confined to street crossings. The question of negligence in such cases depends upon the proximity or remoteness of the car, its speed, and other circumstances. It is the duty of a traveler to look out for himself, and to exercise such ordinary care as would be exercised by a reasonably prudent person under attendant circumstances. The duty imposed upon persons crossing steam railway tracks to stop, look and listen, is not rigidly applied to persons traveling a street used by a street railway. The failure of a person to look for approaching cars before crossing street railway tracks does not place him in any worse position than if he had looked and seen the car; and therefore, if, at the time when he started to drive across the track, the car was at such a distance that an attempt to cross after having seen it would not have been contributory negligence, his failure to look for the car will not preclude his recovery. A person is not guilty of contributory negligence merely because he attempts to cross a street railway when a car is approaching; if that were so, he could never attempt to cross such a track, in the crowded part of a city, where there is practically always an approaching car. In such case, negligence depends upon the proximity or remoteness of the car, its speed and all other circumstances surrounding the occurrence. It is not negligence *per se* for one to cross a street railway track in front of an approaching car which he has seen, and which is not dangerously near."

According to the evidence in the record, the driver of the vehicle could have seen the approaching car at the same instant that the motorman saw the vehicle, which, according to the testimony of the motorman, was at the instant when the car was at a distance of sixty feet from the point where he attempted to cross the track, a distance within which the motorman, according to his own testimony, by the exercise of ordinary care and diligence in the use of the appliances for that purpose, could and should have stopped the car, running at no greater rate of speed than ten miles per hour. Therefore, under the authority of the Philbin case, and under the facts of this case, admitting that the driver of the vehicle did not look and listen for the approaching car, nevertheless he was not guilty of contributory negligence because he did not look and listen. It follows that the husband and driver, not having been guilty of contributory negligence, no such negligence can be imputed to plaintiff.

Upon this branch of the case there was no error, in the instructions to the jury, prejudicial to appellant.

The assignments of error based upon the admission of testimony as to expressions of pain made by plaintiff at the time she was taken from the wreck, and immediately subsequent thereto, and testimony as to the plaintiff's nervous condition and mental suffering, and instructions as to the measure of damages by which the jury should be guided, will be considered together, as such subjects are closely related to each other.

The testimony as to expressions of pain made by plaintiff was properly admitted as being part of the *res gestae*. Authorities in support of this principle are unnecessary. The cases cited by counsel for appellant are not in point. It is well settled that

a plaintiff may recover for mental pain and fright connected with or resulting from an injury. In discussing an instruction quite similar to the instruction here complained of, the supreme court of Illinois, in *Chicago City Ry. Co. v. Taylor*, 170 Ill. 49, 57, said:

"The question as to a recovery for physical and mental pain is not entirely new in this court. In *Indianapolis & St. Louis R. R. Co. v. Stables*, 62 Ill. 313, an instruction was challenged which informed the jury that they might take into consideration pain and anguish of mind consequent on such injury, but the instruction was sustained. It is there said (p. 320): 'It is the mind that either feels or takes cognizance of physical pain, and hence there is mental anguish or suffering inseparable from bodily injury. * * * The mental anguish which would not be proper to be considered is, where it is not connected with the bodily injury, but was caused by some mental conception not arising from the physical injury.' In *Hannibal & St. Joseph R. R. Co. v. Martin*, 111 Ill. 219, the jury were instructed that, 'In determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury have a right to, and they should, take into consideration all the facts and circumstances in evidence before them, the nature and extent of the plaintiff's physical injuries, if any, testified about by the witnesses in this case, her suffering in body and mind, if any, resulting from such injuries, and also such prospective suffering and loss of health, if any, as the jury may believe, from all the evidence, * * * she has sustained or will sustain by reason of such injuries.' The court held the instruction correct, and said (p. 232): 'Where suffering in body and mind is the result of injuries caused by negligence, it is proper to take them into considera-

22

tion in estimating the amount of damages.' See, also, *City of Chicago v. McLean,* 133 Ill. 148, where the *Stables case, supra,* was cited and approved; also *Central Railway Co. v. Serfass,* 153 Ill. 379.

"In a case of this character, we are inclined to the opinion that the rule established by the cases cited is, that any physical and mental suffering attending or arising from the injury received may be regarded as a part of the injury, and, as such, a proper subject of compensation; but injured feelings which might arise in the mind, resulting from the injury, not being a part of the pain naturally attending the injury, cannot be regarded as an element of damage."—Clark's St. Ry. Acc. L. (2d ed.), p. 433; 8 Am. & Eng. Enc. Law (2d ed.) 658.

The authorities cited by counsel for appellant, as opposed to the doctrine above announced, come within the exception stated in the last paragraph of the above quotation; that is, they are cases in which the jury was instructed that mental pain or suffering, causing mortification, humiliation or grief, as a result of a maimed, disfigured or crippled body, was an element of damages which might be considered. These authorities are manifestly not in point, as the facts in the case under consideration clearly distinguish it from such cases; and there was nothing in the instructions which, by any possibility, can be said to have given the measure of damages held to be incorrect in the above cases. The instructions in this case limited the recovery to bodily pain and mental suffering which plaintiff had endured, or may endure, on account of such injuries, or as a direct result of the injuries sustained. At the oral argument, particular stress was laid upon the concluding paragraph of Instruction No. 7, which is as follows:

"Where mental suffering occurs in connection

with a bodily injury, the law does not separate the two, but allows a recovery for both, and the amount of such recovery is not defined by the law, but is left to the judgment of an enlightened jury to be assessed in such reasonable sum as to the jury, under all the circumstances, may seem meet and right.''

.It is said that the above quoted portion of this instruction permitted the jury to enter the domain of conjecture, and that ''the judgment of an enlightened jury'' is not a judgment based upon the evidence before the jury.

In the same instruction, the jury were told that the award of damages must be in such sum as, in their judgment, the evidence warranted. We think that this instruction, read as a whole, as it must be, required the jury to find from the evidence in the case the amount of the award, and that the words, 'judgment of an enlightened jury,' which are particularly complained of, are limited by the words, 'under all the circumstances,' and other specific language upon this point, found in the instruction. The instruction, while perhaps subject to criticism, is not so prejudicial as to warrant a reversal of the judgment in this case.

In view of the rule that all the instructions given must be read and considered as a whole, when this is done, it appears that the jury were, again and again, instructed that they must find from the evidence the several issues presented by the pleadings.

There are fifty-four assignments of error in this record; elaborate briefs have been filed on both sides, and the case has been twice orally argued; we have examined with care the assignments of error argued and the authorities cited; the points discussed and decided in this opinion are the only points presented which we deem of importance. Our conclusions are, that there was no prejudicial error

in the rulings of the court upon the admission or rejection of evidence. The instructions requested and refused, so far as they correctly stated the law, were substantially covered by the instructions given; the other instructions tendered and refused should not have been given; the jury were correctly instructed in the law, as announced herein, applicable to the facts disclosed by the evidence; the verdict and judgment were warranted by the evidence; there being no error in the record, the judgment will be affirmed.                              *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concur.