[No. 6441.]

PHILLIPS ET AL. v. DENVER CITY TRAMWAY CO.

1. STREET RAILWAY COMPANY—*Violation of Municipal Ordinance* —The operation of a car at a speed forbidden by ordinance; or the omission to sound a gong or bell when required by ordinance; or the passing of cars upon the intersection of streets, in violation of an ordinance, is sufficient to convict the company of actionable negligence.

2. CONTRIBUTORY NEGLIGENCE—*Effect*— Negligence of the plaintiff directly contributing to the injury of which he complains, without which it would not have happened, and under circumstances preventing the defendant, by reasonable care, from averting the injury, precludes recovery.

3. ——*In Driving Auto Car*—One driving an auto car upon the public street is bound only to ordinary and reasonable care.

4. ——*In Crossing a Street Railway*—The duty to stop, look and listen which has been prescribed by the courts as to those attempting to cross a steam railway, has not been rigidly enforced in the case of street railways.

5. ——*Imputed*—Where husband and wife unite as joint plaintiffs in an action for the death of a child, the negligence of the husband contributing to the death is not to be imputed to the wife, unless, in the acts producing the injury, he was acting as her agent, or they were jointly engaged in the prosecution of a common enterprise.

If the father is convicted of contributory negligence, the jury may ascertain the amount to be awarded to the mother.

6. ——*For the Jury*—Only in the clearest of cases, where the facts are undisputed, and all intelligent men can draw but one inference, is the question of contributory negligence for the court. Especially is this so where the measure of duty of both parties is variable, depending upon the particular facts and circumstances presented by the evidence. Or where the evidence presents some fact or element tending to lull the plaintiff into a sense of security, and disarm his vigilance, e. g., as where one driving an auto car in the rear of, and near to, an electric car, turns, while such street car is upon an intersecting street, at the rear of it, across the tracks of the railway, into such intersecting street, and is instantly struck by a car moving in the opposite direction, at an excessive speed, and without signal, all in violation of local ordinances. In such case the injured party has the right to assume that any approaching car will move at a lawful rate of speed, give the required signal, and will not enter the intersection of the streets while the other car is upon it; and it is for the jury to say whether he was in the exercise of reasonable care.

The attendant circumstances are to be considered, e. g., that the injured party was upon a street more or less congested by traffic, where his stopping might delay others having equal rights with himself, or might result in his suffering a collision and injury from another, so that it was necessary to decide and act quickly.

7. DEATH—*Action for Wrongs Resulting In—Rights of joint Plaintiffs*—Where husband and wife unite in an action under the statute for the death of a child, the interest of the mother in the recovery is her sole and separate property, and subject to her sole coontrol; and she is not defeated by the contributory negligence of the father. Her right and interest is the same though the husband and father sue alone.

*Error to Denver District Court.*—Hon. GEORGE W. ALLEN, Judge.

Mr. STERLING B. TONEY, Mr. HENRY V. JOHNSON and Mr. R. BURGE TONEY, for plaintiffs in error.

Mr. GERALD HUGHES and Mr. HOWARD S. ROBERTSON, for defendant in error.

M. JUSTICE MUSSER delivered the opinion of the court:

The following facts are disclosed by plaintiffs' evidence:

Fifteenth street, in the city of Denver, runs in a northwesterly and southeasterly direction, and Champa street in a northeasterly and southwesterly direction, crossing Fifteenth street at right angles. For convenience, we will speak of the direction of Fifteenth street as northerly and southerly and that of Champa street as easterly and westerly. They intersect in the business part of Denver. The defendant's double track electric street railway runs on Fifteenth street.

Mr. Phillips, one of the plaintiffs, was driving an automobile between Curtis and Champa streets southerly on Fifteenth. His two young daughters and their uncle were in the rear seat of the automobile. The automobile was following a car going in the same direction on the westerly track, and the former was between the curb and this track. When the car reached the northerly intersection line of Fifteenth and Champa, the automobile was about six feet behind or about even with the rear end of the car, and both were moving at about the same speed—from three to five miles an hour. The speed of the automobile was slackened, and Phillips turned it to his left to cross into Champa and go to Sixteenth street. When the automobile was turned it was about within the intersection of the two streets and the car that had been followed was about fifteen feet from the northerly intersection line. The automobile turned to the left behind the south bound car diagonally across Champa, and just as it reached the westerly rail of the easterly track it was struck by a north bound car

running on the easterly track, which was not seen in time to prevent a collision. The occupants of the rear seat of the automobile were thrown out and one of the little girls, five years of age, was killed. When the collision occurred, the southerly bound car had not quite passed, or was just passing out of the intersection, and the car that struck the automobile had passed the other within the intersection. No bell or gong was sounded. The car that struck the automobile was moving at the rate of from fifteen to twenty miles an hour. There was direct evidence by a witness who stood near that the southerly bound car obstructed the view of the one northerly bound. The ordinance granting a franchise on the streets to the defendant company provided that cars should not be run in that part of the city faster than ten miles an hour. Another ordinance provided that a gong or bell should be sounded on every street car when approaching any street crossing within a distance not exceeding sixty feet from the crossing, and that such gong or bell should be sounded whenever the motorneer would have reason to believe that there was danger of the car running against a vehicle. Another ordinance provided that two cars going in opposite directions should not pass each other upon any street intersection, but that the car farthest from the intersecting street should stop and remain until the approaching car should have entirely passed the intersection.

Julia W. Phillips, the other plaintiff, was the mother of the little girl who was killed. She was not in the automobile, and there is no evidence showing that she had anything to do with her daughter being therein at the time, or as to where or how it was driven.

At the close of the plaintiffs' case, on motion of the defendant, the court directed the jury to return a verdict in favor of the latter. Such verdict was returned and after overruling a motion for a new trial, judgment was entered on the verdict in favor of the defendant and against the plaintiffs. To review that judgment and the rulings of the court, this writ of error is prosecuted. The defendant, in its answer, set up

contributory negligence, on the part of Joseph W. Phillips, as a defense, and it is now urged that such contributory negligence appeared as a matter of law, and for that reason the lower court was right in directing a verdict for defendant. A mass of authorities are cited *pro* and *con,* on this question, but we think the decisions of our own court are amply sufficient here. Each case is to be governed by its own facts, and no two cases are alike.

The excessive rate of speed at which the car that struck the automobile was going, the failure to sound a gong or bell, and the passing of the cars within the intersection, all contrary to ordinances, are each sufficient to warrant a jury in finding that the defendant was guilty of actionable negligence. —*Denver etc. R. R. v. Ryan,* 17 Colo. 98. It is plain from the facts of this case that if the colliding car had remained without the intersection on the opposite side of the street, as the ordinance required it to do, the accident would not have happened. Unless it is observed or should be observed by a defendant in time to avert its consequences, by the exercise of reasonable care, negligence of the plaintiff, that directly contributes to the production of an injury and without which the injury would not have occurred, will preclude a recovery.— *Jackson v. Crilly,* 16 Colo. 103; *Gregoric v. Percy, etc. Co.,* 122 Pac. 785.

The question whether such contributory negligence has been proven is usually one for the jury. Under all the authorities, it is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them, that the question is ever one of law for the court.—*Denver Co. v. Wright,* 47 Colo. 366; *Colo. Co. v. Chiles,* 50 Colo. 191; *Williams v. Sleepy Hollow M. Co.,* 37 Colo. 62.

The measure of duty of both parties in this case was that of ordinary and reasonable care under all the facts and circumstances.—*Nichols v. C. B. & Q. R. R. Co.,* 44 Colo. 501; *Colo. Co. v. Chiles, supra.*

The standard of duty in such cases is variable, depending altogether upon the particular facts and circumstances, and it has been said by this court that in such a case the question of negligence is always one for the jury in *Williams v. Sleepy Hollow M. Co., supra,* where on page 69 it was said:

"Negligence in a particular case is generally a matter for the jury to determine, and it is always so when the measure of duty is ordinary and reasonable care. In such cases the standard of duty is variable."

And on page 70 this court said:

"The standard of duty in cases of this character is variable. It cannot be determined as a matter of law what is and what is not a compliance with the duty of one who is bound to exercise ordinary care under the circumstances. What may be negligence under some circumstances and conditions may not be under others. It is not a fact to be testified to, but can only be inferred from the *res gestae*—from the facts given in evidence; hence it may generally be said to be a conclusion of fact to be drawn by the jury under proper instructions from the court. It is always so where the conclusion is fairly debatable or rests in doubt. It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may properly be ordered or a verdict directed."

And this court, beginning on page 71, quoted with approval from *Railroad Company v. Van Steinburg,* 17 Mich. 120, where Chief Justice Cooley said:

"The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility. For when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible

that if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury. The judge, it is said in one case, is not bound to submit to a jury the propriety of a particular course, when it is perfectly notorious that all prudent men conduct their own affairs differently. The uniformity of the conduct of business men becomes a rule of law.

But while there is any uncertainty, it remains a matter of fact for the consideration of the jury.—*Briggs v. Taylor,* 28 Vt. 183. The difficulty in these cases of negligent injuries is, that it very seldom happens that injuries are repeated under the same circumstances; and, therefore, no common standard of conduct by prudent men becomes fixed or known."

And this court, on page 73, referring to its reasoning from which we have largely quoted, says:

"The foregoing reasoning to a large extent applies to the doctrine of contributory negligence. It is only in the clearest cases that the court should usurp the functions of the jury, in determining questions of negligence or contributory negligence."

In *Rimmer v. Wilson,* 42 Colo. 180, this court, at page 182, said:

"Where the circumstances are such that men of ordinary intelligence may honestly differ as to the question of negligence, it must be left to the jury, and it is always a question to be determined by that body when the measure of duty is ordinary and reasonable care."

Whether the rule as thus announced has been applied by this court need not be inquired into, for certain it is that in particular cases where this court has held, as a matter of law, that contributory negligence precluded recovery, it was always very clear and beyond reasonable doubt, and where there was an entire want of care on the part of plaintiff, or an inexcusable failure to do something which the law said should be done under the circumstances to constitute due care. It is equally certain that this court has never held that a plaintiff was guilty of contributory negligence, as a matter of law, when some fact or element was present that tended to lull the plaintiff into a sense of safety, and caused him to perform or fail to perform the act or acts upon which the contributory negligence was sought to be predicated. On the contrary, this court has held that in such a case the question was one for the jury. Thus, in *D. & R. G. R. R. Co. v. Gustafson*, 21 Colo. 393, a traveler driving a team stopped close to a railroad track to await the passage of a freight train. When it had passed, a flagman signaled him to come on. Without exercising any more care whatever, the traveler drove on the track and was struck by an approaching train, which he could have seen coming one hundred feet away had he looked. Reliance on the signal of the flagman was the exercise of some care, but whether enough to constitute due care was for the jury. The signal, without doubt, lulled him into a sense of security. So with the position of and circumstances surrounding a caboose standing in the street, as shown in *Colo. Co. v. Chiles, supra*.

In the present case, when the car that Phillips was following proceeded into and across the street intersection, he had the right to assume that no car coming on the easterly track would pass it until the southerly bound car had cleared the intersection on the opposite side. He also had the right to assume that cars would be moving at a lawful rate of speed and that a gong or bell would be sounded at the proper time.— *Denver C. T. Co. v. Martin*, 44 Colo. 324; *Nichols v. C. B. & Q. R. R. Co., supra*.

These assumptions, which he had the right to make, the jury might properly regard as sufficient to induce in him a feeling of safety and to lull any apprehension of danger in turning the vehicle to cross the street as he did. Reliance upon these assumptions was the exercise of some care the same as reliance upon the signal of a flagman was the exercise of care in the Gustafson case, but whether it was the exercise of reasonable care, under the attendant circumstances, was for the jury. It must also be remembered that he was upon a street more or less congested by traffic and this circumstance called for quick decision, else his stopping might impede others who had an equal right to the street, or tend to further congest traffic, or might result in some one else running into the automobile. When the collision took place, the jury could have concluded that the automobile had the right to be where it was, while the street car had no right to be there, for it should have been on the opposite side beyond the intersection. What act or thing could Phillips have done that the law says should be done in order that the care exercised by him could be said to have been due care? The law does not name an element that should enter into the due care required in this case. The duty to stop, look and listen, that has been declared in the case of steam railroads, is not rigidly applied in the case of street railways.—*Philbin v. Denver C. T. Co.*, 36 Colo. 331; *Denver C. T. Co. v. Martin, supra.*

The law does not require of a plaintiff that he be entirely free from negligence or want of caution, for that would make the measure of his duty extraordinary care. What it requires is, that he shall not be guilty of such negligence or want of caution as will amount to a lack of due, ordinary or reasonable care. The mere fact that a plaintiff might have been more vigilant will not excuse the wrongful act of the defendant nor preclude the plaintiff from a recovery, for the vigilance exercised might, nevertheless, be reasonable care.—*Western Union Tel. Co. v. Eyser*, 2 Colo. 141; *Denver C. T. Co. v. Wright, supra.*

When all the facts, circumstances and law of this case are massed, it appears that the car Phillips had been following continued across the street intersection, thus conveying to him the information that no car would leave the opposite side of the intersection until the south bound car had reached the other side; that he had the right to believe that a bell or gong would warn him of any approaching car, and hearing none that he had the right to assume none was approaching; that he had the right to believe that cars would move at a lawful rate of speed; that he was in a busy part of the city, where the nature of things required that he should act quickly upon the appearance presented, and those appearances cannot be said to have not been appearances of ordinary safety; that the law did not demand from him extraordinary care, but only such as was ordinary and reasonable, nor did it fix an element that should enter into that ordinary and reasonable care; that the south bound car obstructed the view of the other one, and further that the jury could conclude that he had a right to be where he was when the collision occurred, while the car had no right to be there.

It cannot be said, as a matter of law, that he did not act as an ordinarily prudent person would act, surrounded by all these circumstances. A plaintiff who is turned out of court in such a case is turned out upon the opinion of one man, as Judge Cooley said, as to what a reasonably prudent man would do, and that opinion is made a definite rule of law. It is quite possible and altogether probable that the majority of men would have done the same thing under the same circumstances. It is quite possible that if the same question of prudence were submitted to a jury gathered from the different avenues of life, and perhaps better competent to know the common opinion, they might differ from the judge as to the ordinary standard of care under the circumstances. "The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law." The question

of contributory negligence should have been submitted to the jury as far as Mr. Phillips is concerned.

While an amendment of the statute under which such an action may be brought now says that it may be brought by the father or mother, (Sess. Laws 1907, p. 296) the statute, as it was at the time this action was commenced, provided that it should be brought by the father and mother.—Gen. Laws 1877, p. 343. At the same time the code provided that an action for the death of a child might be brought by the father, or, in case of his death or desertion of his family, by the mother. Construing the act of 1877 and the code provision together, this court has held that such an action may be brought by the father alone or by the father and mother, and that while the mother was a proper party she was not a necessary one. If not joined in the action the mother might apply to be made a party, and such application should be granted for the purpose of protecting her interest in the judgment, for under the statute the mother has an equal interest in the judgment with the father.—*Pierce v. Conners*, 20 Colo. 178.

It follows that in a case like the present one, where the father is living and has not deserted his family, the father is a necessary party, and, therefore, as the mother has an equal interest in the judgment, he prosecutes the action for the mother as well as for himself, whether suing alone or jointly with her. Her interest in the judgment, when obtained, is her sole property, the same as any other property of the wife is her sole and separate property and subject to her sole control in this state. The contributory negligence alleged in the answer is that of the father alone; the mother is not connected with it in any way, either by herself or through her husband as her agent. The negligence of the husband is not to be imputed to the wife unless he is her agent in the matter in hand, or they are jointly engaged in the prosecution of a common enterprise. The mere existence of the marital relation will not have the effect to impute the negligence of the husband or wife to the other.—*Davis v. Guarnieri*, 45 O. St. 470; *Atl.*

*etc. Co. v. Gravitt,* 93 Ga. 369; *Louisville etc. Co. v. Creek,* 130 Ind. 139; *Chicago etc. Co. v. Spilker,* 134 Ind. 380; *Donk Bros. C. & C. Co. v. Leavitt,* 109 Ill. App. 385.

In the case of *Louisville etc. Co. v. Creek, supra,* it was said:

"A husband and wife may, undoubtedly, sustain such relations to each other in a given case that the negligence of one will be imputed to the other. The mere existence of the marital relation, however, will not have that effect.

In our opinion there would be no more reason or justice in a rule that would in cases of this character inflict upon a wife the consequences of her husband's negligence, solely and alone because of that relationship, than to hold her accountable at the bar of eternal justice for his sins because she was his wife."

In the case of *Atlanta etc. Co. v. Gravitt, supra,* the question of imputed negligence, in its various phases, is thoroughly discussed and practically all the authorities are cited and referred to. In that case the negligence of the father contributed to the death of the child and the suit was brought under the statute by the mother for her benefit. The court said:

"Only upon the idea of identity of interest could the act of one be regarded as that of the other. We have already shown that the rule which once obtained, whereby, upon the theory of 'identity' or agency, the negligence of a father was imputed to his infant child, has been utterly repudiated in most jurisdictions, and no longer has any firm footing in the law of this country. The same reasons which have been urged against the injustice and harshness of that rule apply equally well to so indefensible a doctrine as that which would seek to charge a wife with the negligence of her husband, simply because of the marital relation existing between the two. Like the child, the wife has distinct, individual legal rights, which cannot be defeated simply by showing that another, to whom she was related by ties of wedlock, but over whom she exercised at the time no control, was guilty of negligence con-

current with that of the defendant. Incidentally, the husband might derive some benefit from a recovery by her; indeed, upon her death, might inherit her estate, including the money so recovered. This, however, would likewise be true in a case where a child was allowed to recover, despite the negligence of its father; and yet, this is universally held not to be a sufficient reason for unjustly depriving the child of its legal rights as against a wrongdoer entitled to no protection whatsoever as to liability growing out of his own gross misconduct.

It would seem that the efforts on the part of the courts of an earlier day to formulate rules which would extend the doctrine of imputable negligence so as to include persons other than those who actually sustained toward each other the relation of master and servant, or principal and agent, or who were jointly engaged in the prosecution of a common enterprise, have proved to be entirely unsuccessful legal ventures. Such rules have already met the fate which must inevitably sooner or later have befallen them, for they stand upon no foundation of logic, wisdom or justice."

There are a number of cases that hold that recovery may be had by innocent beneficiaries in a statutory action for death by wrongful act, notwithstanding the contributory negligence of one of the beneficiaries, and Ohio and New York, in the cases cited below, seem to have gone farther.—*Cleveland etc. Co. v. Crawford,* 24 O. St. 631; *Donk Bros. C. & C. Co. v. Leavitt, supra; Chicago City Ry. Co. v. McKeon,* 143 Ill. App. 598; *Lewin v. Lehigh Valley R. Co.,* 65 N. Y. Supp. 49; *Wolf, Admr. v. L. E. & W. R. Co.,* 55 O. St. 517; Booth Street Railways, sec. 391.

While these authorities turn more or less on particular statutes, yet the principles announced are applicable here and the statutes in principle are the same as ours. We will apply the reasoning of these authorities to the present case. If neither of the parties are defeated in.the action a judgment of not less than $3,000 nor more than $5,000 will be obtained in which the father and mother will have an equal interest or one-

half each. This distribution is made by the statute. As has been seen, the father, as to the mother's part, has no beneficial or legal interest. As to that part he is a trustee, as it were, for the mother. He bears the relation to the mother as a beneficiary that an administrator of the deceased, who is a stranger, does in those states where the action is to be prosecuted by the administrator for the benefit of the parents and next of kin, or as such an administrator, who is a beneficiary, would bear to the other beneficiaries. Now certainly it would be inequitable to deprive an innocent mother of not less than $1,500 nor more than $2,500 for the death of her child, to which she is entitled by the statute, on account of the negligence of the father, with which she had nothing to do and cannot be held responsible. At most the contributory negligence of the father could be shown to defeat his right to the portion of the damage which would otherwise go to him. As seen in 55 O. St., supra, an amended statute required the jury to give such damages as they may think proportioned to the pecuniary injury resulting from such death to the persons, respectively, for whose benefit such action shall be brought, and it was said the word "respectively" requires the jury to assess the damages for the beneficiaries distributively. The statute also provided that the administrator should apportion the amount received among the beneficiaries unless adjusted between themselves in such manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries, and the laws of descent and distribution of personal estates. In view of this statute, the court said:

"It therefore seems clear that in arriving at the total amount of damages to be awarded under the statute as amended, the jury should consider the pecuniary injury to each separate beneficiary (not found guilty of contributory negligence), but return a verdict for a gross sum, which sum should be distributed among the beneficiaries not found guilty of contributory negligence. As to beneficiaries found guilty of contributory negligence, no damages should be awarded on

their account, and the jury should find in its verdict which, if any, of the beneficiaries were guilty of such contributory negligence. This would no more complicate the trial than is usual in trials for torts, in which it often occurs that some are discharged, and others held liable."

Our statute is simpler than the Ohio statute relative to the distribution of the judgment. Each of the parties here have a half interest, and it would be an easy matter for the jury, under proper instructions and interrogatories, in case they find the father to be guilty of such contributory negligence as would defeat his recovery, to ascertain the amount that should be given to the mother, whose rights are not precluded.

In the case in 109 Ill. App., *supra,* it appears that the action was brought by the administrator for the benefit of the father and mother. It was contended that the mother was guilty of contributory negligence. The court held that her negligence could not deprive the father of his right under the statute, and that the mother's negligence could only be considered in determining the amount of damages. The fact that our statute did not, in this case, give the mother the right to bring the action alone does not alter the case as the defendant contends, for by the statutes under which the Ohio and Illinois decisions were made, no beneficiary had the right to bring the action unless a beneficiary happened to be the administrator of the estate of the decedent.

The case of *Clark et al. v. K. C. St. L. & C. R. Co.,* 219 Mo. 524, cited and commented upon by the defendant in error, is not in point here. In that case the mother brought the action in her own name and joined the father as co-plaintiff, and alleged that she and her husband were divorced, and that he was made plaintiff against his will. The defendant demurred upon the ground of improper joinder of plaintiffs and that the father was not in fact a plaintiff. Under the Missouri statute, which is the same as ours excepting when construed with our code provision, the action had to be maintained by

the father and mother.    So that the father was a necessary party, whether for his own interest in the judgment or for the interest of the mother, who was also a necessary party.    The court held that the mother could not herself sue and recover. Here, however, the father can maintain such an action alone, and yet the mother will be interested equally in the judgment, or it may be maintained by the father and mother and each be alike equally interested.    In the Missouri case, the question was one of necessary parties.    Here, the action is brought by the necessary and proper parties of their own volition.    There, the action was not properly brought.    Here, it was.    The question here is:    Having the necessary and proper parties to maintain the action, can the mother be deprived of her interest in the judgment given her by statute, on account of the contributory negligence of the father, with which she was in no way connected?    We have said that she cannot be.

This conclusion is reached, of course, upon the plea of contributory negligence as tendered by the present pleadings and upon this record.    With respect to that plea, as affecting the mother, the defendant may be permitted to amend if so advised.

The authorities seem to be so overwhelming to the effect that contributory negligence may be pleaded in a case like the present that the contention of the plaintiff, that it cannot be relied upon as a defense, need not be noticed.

For the reasons appearing above, the district court erred in directing a verdict and the judgment is, therefore, reversed and the cause remanded.

*Reversed and Remanded.*

Decision *en banc.*

Mr. JUSTICE GABBERT dissents.    CHIEF JUSTICE CAMPBELL not participating.

Decided June 3, A. D. 1912.    Rehearing denied December 9, A. D. 1912.