Cunningham, Presiding Judge.
Drorbaugh filed his complaint in the district court of Larimer county on February 11,1908, to recover actual and punitive damages from the appellant on account of the destruction of two wagons belonging to the plaintiff. One of the wagons of the appellee (hereinafter called the plaintiff) broke down upon the railroad tracks of the defendant corporation at a public crossing. This wagon was loaded with beet pulp. Plaintiff procured another wagon which he placed alongside of the broken one, both wagons being upon the track of the defendant. The pur *190 pose of the plaintiff in placing the second wagon npon the track was to transfer the load from the broken wagon to the sound one, with the view of removing, as soon as possible, both wagons from the track of the defendant. While engaged in the work of transferring the pulp from one wagon to the other a train of appellant, consisting of an engine and caboose, was driven down the railroad track by defendant’s * servants, and collided with the wagons upon the crossing, resulting in the destruction of the two vehicles. The accident occurred between, two and three o’clock in the afternoon. The plaintiff testified that he saw the engine of the defendant when it was something like one thousand feet from the crossing where he was engaged in transferring the pulp from one wagon to the other, and could have seen it at all times while it was traversing that distance; that he could have gone or sent someone up the track for the purpose of signaling the train, but he did not do so; neither did he make any attempt whatever to signal the train, but he testified that:
“As far as I was personally concerned, I took no step whatever to notify the railroad company or its agents or servants of the condition in which I was. I took it for granted that they would see in the first place, and that having seen, that they would attempt to stop in time, and that the attempt would prove successful and that I would avoid injury.”
The railroad track for some distance immediately north of the railroad crossing (the train was coming, on the day in question, from the north) runs upon a curve, the outside of the curve being to the right. This fact interfered with the vision of the engineer. The fireman, for some reason, appears not to have seen the plaintiff. At any rate, if he did see him, which he might have done in ample time to prevent the collision if he had been *191 on the look-out, he did not report the presence of the wagons upon the track to the engineer. Evidence was introduced on behalf of the plaintiff tending to show that the fireman, from the time the train left the water tank where it had stopped for water, nearly one thousand feet from the-crossing, and over all that distance, could have seen the plaintiff from the position which the fireman occupied; that for a short distance after the train left the stand-pipe, the fireman had his head out of the window and was looking in plaintiff’s direction, but that he thereafter withdrew his head, and did not look out of the cab again until the wagon was actually struck. The engineer testified that he was unaware of the wagons upon the track until he was about one hundred forty feet from the crossing, and thafi thereafter he did everything in his power to stop the train. There were no signals given by the engineer other than his signal to the conductor at the time of the starting of the train from the water tank; that the whistle was not blown or the bell rung at all after the train left the stand-pipe until it had struck plaintiff’s wagon. At least there was evidence introduced by the plaintiff to this effect. Plaintiff’s evidence also tends to show that the train did not slacken speed at all until the wagons were actually struck. There was evidence that the crossing, which was in or near the town of Loveland, was at that time of the year in almost constant use; that at least six hundred teams passed there during a day of ten hours, and that it was being used a great deal at that particular time of the day. Defendant’s engineer, called as a witness in its behalf, testified that he had had experience for five years upon this particular road, and knew that teams were passing there almost constantly; that he knew loaded teams were liable to get stalled there. He also testified that he knew that for a quarter of a mile beet pulp was strewn along *192 and upon the track on each side of the crossing, having the effect of making it more difficult to stop the train because of the slippery character of the crushed pulp upon the tracks. He further testified that it took him a distance of one hundred feet to come to a full stop, and that he could not see the crossing in question for one hundred and forty feet before he reached it, yet under all these circumstances he gave no direction to the fireman to keep a watch out upon his (the fireman’s) side and this notwithstanding the fireman was shown to have been inexperienced, or had been firing only for about six weeks. One witness testified in behalf of plaintiff that, observing the approach of the train, and seeing that it was making no effort to stop, he (the witness) ran down the track a considerable distance, waving his hat to attract the attention of the fireman and engineer. The evidence of this witness tends to show that if the fireman had been on the lookout, he could not have failed to observe the signals which this witness was giving. Indeed, he could have seen the wagons upon the track at all times without any signal whatever. In this resume of the testimony we have, as it is our duty to do, considered and given it from the standpoint most favorable to the plaintiff. A verdict was returned in favor of the plaintiff for $250 actual and $250 punitive damages, and judgment was accordingly entered. From this judgment the case is here on appeal.
1. The first matter which we shall consider is the contention made on behalf of the defendant that punitive damages cannot, under the circumstances of this case, be awarded against a corporation. This contention finds support in the opinion rendered in Ristine, Receiver, v. Blocker, 15 Colo. App., 224, 61 Pac., 486. As stated in 13 Cyc., 114:
“How far a principal is liable in exemplary damages *193 for the acts of his agent is a question about which there is the utmost contrariety, and not a little confusion of authority. * * * Some of the courts have laid down the broad doctrine that a principal is liable in exemplary damages for the acts of his agent, however tortious or unauthorized, where they are performed in the course of his regular business, on the ground that the principal is liable for all acts so done by his agent; and this, too, whether such acts are previously authorized o.r subsequently ratified by the principal. The better rule on this .subject seems to be that a principal will not be held liable in exemplary damages for the act of an agent, unless it be shown that he authorized or approved the act for which the exemplary damages are claimed, that he approved of or participated in the wrong of which his agent had been guilty, or that he had not exercised proper care in selecting his servants.”
As further illustrating the conflict in authorities on this vexed question, see Sutherland on Damages (2nd Ed.), Vol. 1, Sec. 408 et seq.; Watson on Damages from Personal Injury (1909), Sec. 734; Cook on Corporations (6th Ed.), Sec. 15b.
Counsel for plaintiff, in their brief and on oral argument, have contended with much force against the doctrine laid down in the case of Ristine v. Blocker, supra. But we are unwilling to disturb the rule therein announced, and thus further add to the confusion and uncertainty of the rule in this state pertaining to exemplary damages as applied to corporations, if it be true, as counsel contends, that there is such confusion. We think it more fitting that a reconsideration of the doctrine as announced in the Blocker ease should be left to the supreme court of this state. Adopting the rule in the Ristine case, as we are constrained to do, we are obliged to hold that the trial court committed error in submitting *194 to the jury the question of exemplary damages, and that the verdict and judgment in favor of the plaintiff, insofar as it pertains to exemplary damages, cannot stand.
2. The defendant complains of Instruction No. 11, given by the trial court, which reads as follows:'
“You are further instructed that if you believe and find from the evidence in this case that after becoming aware of, and having notice of the position of danger in which the plaintiff was situated, defendant’s engineer did not at once exercise all diligence in an effort to avert an accident, then you will find for the plaintiff, notwithstanding the fact that negligence of plaintiff may have exposed him to the danger in the first instance.”
This instruction, we think, is probably erroneous in that it places too high a degree of care upon the defendant. We think the authorities are fairly harmonious in holding that under the circumstances as detailed in this instruction the defendant is only required to exercise ordinary care. What constitutes ordinary care, of course, depends upon the facts and circumstances in each case. Numerous authorities cited by the plaintiff in his brief, though cited upon other points, support the view we have here expressed. Cases almost without number can be found supporting this view, but we shall content ourselves with citing the following from this jurisdiction: D. & R. G. Co. v. Buffehr, 30 Colo., 27, 69 Pac., 582; Denver, etc., Co. v. Dwyer, 20 Colo., 132-7, 36 Pac., 1106; Hector M. Co. v. Robertson, 22 Colo., 494, 45 Pac., 406; Phillips v. Denver Tram. Co., 53 Colo., 458, 128 Pac., 460.
But it -doe's not necessarily follow, and as we view it, it does not follow at all,- that the error pointed out in' this instruction was in any wise prejudicial to the defendant. The evidence of plaintiff tended to show that the defendant used no care or caution whatever to prevent the happening of the accident, while the'testimony *195 of the engineer and fireman was to the effect that the former did everything that could be done to prevent it after he discovered the wagons upon the track. On this subject the engineer testified:
“As soon as I mistrusted there was something wrong, I threw the brake-valve into the emergency and gave sand to the rails; that is, sanded it as well as I could. * * * There loas nothing else that I was able to do that would have tended to check the movement of the train. '* * * I did everything I could have done to stop that train. After we saw the team ive did everything ive could have done to stop it.”
The fireman testified as follows:
“I know of nothing that co'uld have been done by the engineer at this time, under those circumstances, that he did not do to avoid that collision.” [The italics are ours.]
Had there been evidence offered on behalf of either party tending to show that the engineer made ineffectual or misdirected efforts to stop the train, but that in so doing he did not employ all the resources at his command to effectuate that purpose, then we should feel disposed to hold that the error in the instruction to which we have directed attention constituted reversible error, but where thé record, as in this case, shows either that the engineer did nothing whatever to stop the train, or that he did everything that was possible for him to do, that is, “exercised all diligence,” we are unable to perceive wherein the defendant was prejudiced by the imposition of too high a degree of care upon its employe. The jury will be presumed to have followed the instructions of the court and been 'guided by the evidence in reaching their verdict. And if they did this, they must have concluded that the testimony of the plaintiff, *196 to the effect that no care whatever was used, stated the true situation, and they must have discredited the testimony of the defendant’s fireman and engineer to the effect that everything possible was done.
3. It is vigorously contended by defendant that the testimony of plaintiff, which we have liberally incorporated in our statement of the facts, conclusively shows that the plaintiff was, as a matter of law, guilty of contributory negligence, and that for this reason the trial court should have' directed .a verdict in its favor.' The law applicable to this contention has been elaborately considered in the recent case of Phillips v. Denver City Tramway Co., 53 Colo., 458, 128 Pac., 460. In that case Chief Justice Musser has with much industry collated the authorities, and with unusual clearness laid down the rules of law governing in such matters. At page 462 of the Phillips case Judge Musser says:
‘ ‘ The question whether such contributory negligence has been proven is usually one for the jury. Under al'1 the authorities it is only in the clearest of cases, when the facts are undisputed and it is plain- that all intelligent men can draw but one inference from them, that the question is ever one of law for the court. ’ ’
The quantum of proof required to establish contributory negligence is, of course, the same as is required to establish negligence. The measure of plaintiff’s duty in this case was, “that of ordinary and reasonable care under all the facts and circumstances.” — Nichols v. C. B. & Q. R. R. Co., 44 Colo., 501, 98 Pac., 808.
“Negligence in a particular case is generally a matter for the jury to determine, and it is always so when the measure of duty is ordinary and reasonable care. * * * It is only where there is an entire absence of testimony tending to establish the case that a non-suit may properly be ordered or a verdict directed.”
*197 Williams v. Sleepy Hollow M. Co., 37 Colo., 62, 86 Pac., 337, quoted with, approval in Phillips v. Denver Co., supra. Both in the Williams and the Phillips cases the following from Railroad Co. v. Van Steinburg, 17 Mich., 120, opinion by Chief Justice Cooley, is quoted with approval:
“For when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff’s conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing-with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first judge has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed, in which a judge would feel at liberty to take the question of the plaintiff’s negligence away from the jury.”
We shall not further prolong this opinion by quoting from the Colorado authorities, but proceed to the application of the doctrine now well established in Colorado to the facts which the record in the.case before us has established, or reasonably tends to establish. Summarized again, for the purpose of determining whether the plaintiff used reasonable care to prevent the accident, the facts which the evidence tends 'to disclose are that for almost one thousand feet the wagons of the plaintiff *198 were in full view of the fireman, at least, who was upon the engine; that the fireman, directly after leaving the water tank where the engine had stopped for water, looked out of .the cab in the direction of the .plaintiff and the wagons. The accident happened almost at midday, and there was nothing whatever to prevent the fireman from seeing the wagons every moment of the time after his train left the water tank and before it collided with them; the wagons were upon a crossing where teams were passing almost, if not quite, every minute of the day; it was a frequent occurrence for loaded wagons to break down upon the track at this particular crossing. With all these facts the engineer admits he was familiar. The train was running slowly — the engineer says in the neighborhood of eight or ten miles an hour — when he first saw the wagons. Trains had frequently stopped voluntarily under such conditions, that is, when wagons had broken down upon this particular crossing. Under these circumstances we are not willing to sáy, as a matter of law, that the plaintiff was guilty of contributory negligence, that is, that he did not exercise the care of an ordinarily prudent man when he .assumed that the train wouíd be stopped in time to prevent the accident. Moreover, from the plaintiff’s evidence, no amount of gesticulation on Ais part could have attracted the attention of the engineer or the fireman, since, according to the testimony of the engineer, he, on account of the curve in the track, could not have seen the plaintiff, and the testimony is practically uncontradicted that the fireman would not have seen him because he (the fireman) was shoveling coal- or otherwise engaged, and was not .on the lookout. This evidence is strongly supported by the.further evidence, offered on behalf of plaintiff, that a- disinterested party did run down the track a. considerable distance, towards the approaching train, wav *199 iug his hat as a signal in a vain effort to attract the attention of the fireman and the engineer.
Decided May 12, A. D. 1913.
Rehearing denied June 10, A. D. 1913.
Our conclusion is that the evidence discloses clearly negligence on the part of the defendant, and that there is sufficient evidence in the record, to support the apparent finding of the jury that the plaintiff was not guilty of contributory negligence.
The judgment, therefore, as to the amount of actual damages awarded the plaintiff should he sustained. The case is remanded with instructions to the trial court to modify the judgment to the extent of eliminating so much of it as was awarded by way of exemplary damages.

Modified and Affirmed.